**FAEGRE DRINKER BIDDLE & REATH LLP**
Michael Jaeger (SBN 289364)
*michael.jaeger@faegredrinker.com*
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025-6543
Telephone: 310-500-2090
Facsimile: 310-500-2091

R. Trevor Carter (*pro hac vice*)
*trevor.carter@faegredrinker.com*
Louis T. Perry (*pro hac vice*)
*louis.perry@faegredrinker.com*
Andrew M. McCoy (*pro hac vice*)
*andrew.mccoy@faegredrinker.com*
Reid E. Dodge (*pro hac vice*)
*reid.dodge@faegredrinker.com*
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: 317-237-0300
Facsimile: 317-237-1000

David R. Merritt (*pro hac vice*)
*david.merritt@faegredrinker.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: 612-766-7000
Facsimile: 612-766-1600

*Counsel for Plaintiff Intex Recreation Corp.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEX RECREATION CORP., <br> *Plaintiff,* <br> v. <br> BESTWAY (USA), INC. and BESTWAY INFLATABLES & MATERIALS CORPORATION, <br> *Defendants.* | Case No. 2:19-CV-08596-TJH-AS <br><br> **JOINT RULE 16(B)/26(F) REPORT** |

Plaintiff Intex Recreation Corp. ("Intex") and Defendants Bestway (USA), Inc. and Bestway Inflatables & Materials Corporation (together, "Bestway") through their respective counsel, met on April 17, 2020, to conduct the conference required by Federal Rule of Civil Procedure 26(f) and Local Rule 26-1. Based on that meeting, and acknowledging that the Court has vacated the initial scheduling conference (ECF No. 50), the parties respectfully submit the following Joint Rule 16(b)/26(f) Report and proposed schedule to incorporate deadlines common to patent cases (*see, e.g.,* Case No. 16-cv-5194-TJH-SS, ECF Nos. 19–21) and, thereby, promote efficiency and predictability for the Court and the parties:

**a.** **Statement of the Case**

**Plaintiff's Position:** Intex is a well-known innovator in the inflatable products industry. Bestway competes with Intex in this industry and is a serial infringer of Intex's intellectual property. (*See, e.g.,* ECF No. 19-3 (prior ITC exclusion order against Bestway).) This case is the latest in Bestway's campaign of misappropriating Intex's intellectual property related to inflatable products technology.

Intex respectfully requests six separate claims for relief in this case:

- *False Advertising and Unfair Competition*: Intex's first four claims for relief relate to Bestway's false advertising and unfair competition in connection with its Tritech™ branded products. In short, Bestway has falsely advertised and/or continues to falsely advertise these products so as to deceive consumers into believing that these products provide the same advantages as Intex's innovative Dura-Beam™ technology. Bestway's actions constitute at least false advertising under 15 U.S.C. § 1125(a) and California Business & Professions Code § 17500 *et seq.* (*see* ECF No. 19, ¶¶ 73–80, 89–94), and unfair competition under California Business & Professions Code § 17200 *et seq.* and California common law (*see id.*, ¶¶ 81–88, 95–97).

- ***Patent Infringement***:   Intex's remaining two claims for relief relate to Bestway's patent infringement in connection with its Tritech™ branded products.  Specifically, pursuant to at least 35 U.S.C. §§ 271(a) and/or (b), Bestway has infringed and continues to infringe various claims of U.S. Patent No. 9,901,186 (entitled "Internal Tensioning Structure Useable with Inflatable Devices") (the "'186 Patent") and U.S. Patent No. 10,165,869 (entitled "Internal Tensioning Structure Useable with Inflatable Devices") (the "'869 Patent").  (*See* ECF No. 19, ¶¶ 98–119.)[1]

**Defendants' Position:**

While Bestway is a newer entrant into the United States inflatable products market, it has been able to rapidly and successfully market its lower cost and higher quality products.  Instead of competing with Bestway on the store aisles or the virtual shelves, Intex has sought time and time again to stifle competition by knowingly asserting invalid patents.  Just recently, Bestway successfully invalidated claims of Intex's Patent US 9,254,240 ("240 Patent") which were directed to the same limitations and elements at issue in the instant action.

Here, Intex has alleged that Bestway's manufacture, use, offers for sale, sales, and importation into the United States of air mattress products infringe select claims of the '186 Patent and '869 Patent. Bestway contends that it does not infringe the asserted claims, and moreover, has not willfully infringed the Patents as Intex contends. Further, Bestway contends that the Patent claims are invalid at least in view of the prior art within the field of the patents, including prior patents and products with tensioning structures. As Intex well knows, Bestway incorporated the tensioning structures covered in the '186 Patent and '869 Patent in its Comfort Quest air beds it

---

[1] To be clear, Intex strongly disputes Bestway's attempt to distract from this matter by referring to the unrelated '240 Patent—which, despite Bestway's contrary suggestion, is the subject of another ongoing patent infringement litigation in this District (*see* LA CV16-03300 JAK (Ex)) based on claims that survived Bestway's repeated and harassing invalidity attacks.  However, Intex does not believe this submission is the appropriate means for clarifying Bestway's mischaracterizations.

sold as far back in 2007, approximately one decade before the priority dates of the patents at issue here. Additionally, fully litigated invalidation of claims in the '240 Patent -- directed to the very same subject matter currently at issue here – forecloses Intex's ability to relitigate the same issues.

Intex has also alleged that Bestway's Tritech™ advertisements are false or misleading. Intex arrives at this conclusion from its own twisted and correct assumptions that are based off a single image. Bestway's advertisement which contains no affirmative representations are neither false nor misleading. Moreover, Intex cannot show any evidence of actual deception.

**b.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Intex's patent claims for relief pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over Intex's false advertising claims for relief pursuant to 28 U.S.C. §§ 1331 and 1367. With respect to Intex's claims for relief arising under the laws of California, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**c.    Legal Issues**

**Plaintiff's Position:** Plaintiff's claims for false advertising, unfair competition, and patent infringement are, from Intex's perspective, the main legal issues in this case.

**Defendants' Position:** Bestway's non-infringement and invalidity contentions along with Plaintiff's claims for false advertising are the main legal issues to be determined in this case. Bestway's non-infringement and invalidity claims will depend on the Court's legal construction of the asserted claims, if disputed. Additionally, there are legal issues relating the availability and extent of remedies sought by each party.

**d.    Parties, and Non-Party Witnesses**

1     **Plaintiff's Position:** At this stage of the proceedings, Intex is not aware of all potential percipient witnesses. However, at this time (and without waiving its rights to later identify additional witnesses), Intex reasonably believes that witnesses will include, at a minimum: Ryan Slate, Matthew Whalen, Patrizio Fumagalli, any witnesses listed in the parties' respective Rule 26(a) initial disclosures, and any technical and/or economic expert witnesses of the parties.

    Pursuant to the Court's request (*see* ECF No. 41, p. 3), for conflicts purposes, Intex identifies the following entities (which include subsidiaries, parents, affiliates, and additional entities all of which were identified in Intex's Notice of Interested Parties and Corporate Disclosure Statement, ECF. No. 3): Intex Development Company Ltd. and Intex Marketing Ltd.

    **Defendants' Position:** Bestway similarly is not aware of all potential witnesses that may be relevant in the case. Preliminarily, Bestway believes witnesses will include those individuals identified in the parties' respective Rule 26(a) initial disclosures, third-party witnesses with knowledge of the prior art, and technical and economic expert witnesses to support its non-infringement and invalidity claims.

    Additionally, pursuant to the Court's request, for conflicts purposes, Bestway identifies the following subsidiaries, parents, and affiliates (which include subsidiaries, parents, affiliates, and additional entities all of which were identified in Intex's Notice of Interested Parties and Corporate Disclosure Statement, ECF. No. 40): Bestway Enterprise Co. Ltd.; parent company to Bestway Inflatables and Materials Corporation Bestway Global Holding Company Inc.; parent company to Bestway Enterprise Co. Ltd.

e.   **Damages**

    **Plaintiff's Position**: Intex has been harmed by Bestway's false advertising, unfair competition, and infringing activities. Intex intends to pursue all appropriate relief under the controlling laws relating to damages for such claims, which includes,

- 5 -

for example and without limitation, consequential damages, a reasonable royalty, and/or lost profits. However, because Intex does not yet possess detailed information regarding the extent of Bestway's wrongful conduct (including, for example, the extent of Bestway's sales), Intex cannot, at this time, provide a realistic range of possible monetary damages. Intex intends to rely on the testimony of a damages/economic expert to support its damages claims.

**Defendants' Position:** Bestway contends that Intex has not been harmed because Bestway has not infringed the asserted patent claims and/or the asserted patent claims are invalid. Bestway also contends that Intex has not been harmed because Bestway's Tritech™ advertisements are neither false nor misleading.

Bestway also believes that Intex is in a position to provide a realistic range of provable damages, based on its own experience with product sales in this category. Intex is in possession of information relating to and has the burden to demonstrate any alleged lost profits, and to the extent Intex has a licensing history, information relating to the royalty rate requested.

Bestway will provide sales data in discovery, and Bestway intends to rely on economic expert assessment and testimony to rebut Intex's damages claims.

Bestway reserves the right to pursue attorneys' fees and costs for Intex's assertion of unsubstantiated patent or false advertising claims.

f. <u>Insurance</u>

**Plaintiff's Position:** No insurance agreement or policy covers Intex's claims in this litigation.

**Defendants' Position:** Bestway is not aware of an insurance agreement or policy that covers the claims and defenses in this litigation.

g. <u>Motions</u>

**Plaintiff's Position:** At this time, Intex does not anticipate seeking to add parties but does plan to file an amended complaint adding allegations about a new

Bestway product for which Bestway's advertising leads to false advertising and unfair competition. Further, Intex reserves its rights to seek further amendments pursuant to the Federal Rules of Civil Procedure, this Court's Local Rules and Standing Orders, and any Scheduling Orders entered in this case—particularly in view of any additional, relevant information that Intex may learn through discovery.

**Defendants' Position:** Bestway does not currently anticipate moving to amend its pleadings in this case. Bestway similarly reserves the right to amend in view of any additional, relevant information that Bestway may learn through discovery.

**h.  Manual for Complex Litigation**

Based on the current scope and issues in this case, the parties agree that the procedures set forth in the Court's established rules and regulations are sufficient to guide the administration of this case, and the procedures of the Manual for Complex Litigation need not be used.

**i.  Status of Discovery**

The parties expect to exchange Initial Disclosures as set forth in Exhibit A. The parties may serve discovery requests beginning on April 20, 2020.

**j.  Discovery Plan**

Exhibit A attached hereto sets forth the parties' respective proposed schedules for this case, including discovery dates and discovery cut-offs.

The parties intend to conduct discovery on all of the claims and defenses alleged in the operative Complaint (ECF No. 19) and Answer (ECF No. 37) consistent with this Court's Local Rules and the proposed staggering of the close of fact and expert discovery. Additionally, and without waiving any objections by the party from whom discovery is sought and without creating an agreement by such party that any such information is discoverable, the parties intend to seek discovery on at least the following general topics:

- The model names and/or any other identifiers for Bestway's allegedly infringing products;
- The structure of Bestway's allegedly infringing products;
- The marketing and advertising of Bestway's allegedly infringing products;
- The amount of, and bases for, monetary damages and non-monetary relief alleged by Intex;
- Bestway's sales information for the allegedly infringing products, including, but not limited to, past, current, and projected sales and related financial information;
- The parties' respective claim construction, patent infringement, patent non-infringement, validity, and invalidity positions; and
- Correspondence between the parties and/or between a party and a third party or third parties related to the claims, defenses and remedies sought in this case.
- the conception, reduction to practice, and prosecution of the '186 Patent and '869 Patent
- prior art to the '186 Patent and '869 Patent;
- Intex's knowledge of the prior art to the '186 Patent and '869 Patent;
- Intex's licensing of the '186 Patent and '869 Patent;
- any affirmative defenses or counterclaims ultimately raised by Bestway.

The parties may serve a maximum of 30 interrogatories. The parties may serve a maximum of 25 total requests for admission with respect to substantive matters and unlimited requests for admission for authenticating documents.

The parties agree that Fed. R. Civ. P. 30 should govern depositions in this matter. Notwithstanding, if any deposition requires a translation service, the parties further agree that such deposition will be limited to a maximum of 13 hours.

The parties will negotiate the terms of a stipulation regarding the discovery and production of electronically stored information and anticipate filing such stipulation on or before May 1, 2020.

**k.  Fact Discovery Cut-Off**

As set forth in Exhibit A, the parties agree to 14 weeks after entry of the Court's claim construction order as the date for the completion of fact discovery, including resolution of all discovery-related motions.

**l.  Expert Discovery**

As set forth in Exhibit A, the parties agree to 27 weeks after entry of the Court's claim construction order as the date for the completion of expert discovery.

**m.  Dispositive Motions**

**Plaintiff's Position:** Until fact and expert discovery is complete, Intex cannot state with certainty which issues, if any, for which it intends to file a motion for summary judgment. However, Intex anticipates potentially moving for summary judgment—and reserves the right to do so before the close of any discovery—on the issues of patent infringement, validity, false advertising, and/or unfair competition.

**Defendants' Position:** Bestway believes that discovery is needed before it can determine the issues for which it intends to file a motion for summary judgment. Bestway may move for summary judgment on the issues of noninfringement, lack of willfulness and invalidity. Bestway reserves the right to move *in limine* to exclude evidence prior to trial.

CASE NO. 2:19-CV-08596-TJH-AS
JOINT RULE 16(B)/26(F) REPORT

**n.   Settlement**

The parties have had preliminary settlement discussions, but settlement does not appear likely at this time. The parties agree to mediation as the preferred mechanism for alternative dispute resolution in this case.

**o.   Trial Estimate**

The parties currently estimate that 5–7 days will be necessary for trial on all issues currently pled based on the following factors: the number of asserted patent claims, uncertain number of accused products, uncertain number of prior art products or references (and third party witnesses necessary to authenticate the same) and uncertainty as to whether live testimony will require translation.

**p.   Trial Counsel**

**Plaintiff's Position:** Counsel of record for Intex will try this case, with Trevor Carter serving as lead trial counsel.

**Defendants' Position:** Counsel of record for Bestway will try this case, with John S. Artz serving as lead trial counsel.

**q.   Independent Expert or Master**

The parties do not believe that appointing a Master pursuant to FED. R. CIV. P. 53 or an independent scientific expert is necessary in this case.

**r.   Timetable**

The parties have provided their respective proposed schedules in Exhibit A attached hereto.

**s.   Other Issues**

**Protective Order:** The parties will negotiate a stipulated Protective Order and expect to file the stipulated Protective Order, or notify the Court of any disputed issue(s) regarding the same, on or before May 1, 2020. Absent a Court order, Discovery cannot be withheld on the basis of confidentiality.

**E-mail Service:** Pursuant to FED. R. CIV. P. 5(b)(2)(E), the parties consent to service via electronic mail to counsel of record of all papers requiring service and agree that filing via the Court's ECF system constitutes such electronic service.

**Rolling Basis of Discovery:** The parties agree that documents identified in the parties' Rule 26(a) Initial Disclosures or responsive to document requests will be produced on a rolling basis as soon as they have been located, Bates numbered, and reviewed for privilege; provided however, that the parties agree to work with reasonable diligence in searching for, reviewing, and producing such documents. However, this does not change or modify the parties' obligations to timely produce documents pursuant to FED. R. CIV. P. 34(b)(2).

**Document Preservation:** The parties each represent that they have taken all necessary steps to preserve potentially relevant hard-copy and electronic documents and data relevant to this litigation. Specifically, the parties have made, and will continue to make, reasonable efforts to preserve all electronic data relevant to either party's claims or defenses. For clarity, because of the undue burden or cost as contemplated by FED. R. CIV. P. 26(b)(2)(B), no party is required to preserve, search, collect, process, review, or produce ESI from:

    (i)    Deleted, slack, fragmented, unallocated, or other data only accessible by forensics;

    (ii)    Random access memory (RAM), temporary files, or other ephemeral data;

    (iii)    Online access data (such as temporary internet files, history, cache, cookies);

    (iv)    Data in metadata fields that automatically updates during routine use (such as the "last opened" and "last accessed" fields);

    (v)    Back-up data that is substantially duplicative of data that is more accessible elsewhere;

      (vi)    Server, system, or network logs;

      (vii)   Electronic data (such as email, calendars, and contact data) sent to or from mobile devices (such as iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage); or

      (viii)  Voicemail, notes on mobile devices, and/or text messages.

**Pre-Suit Discovery Protections:** The parties agree that any privileged communications that occurred on or after July 11, 2019 do not need to be logged on a privilege log. The parties agree that FED. R. EVID. 502 applies to waiver and inadvertent disclosure of information subject to the attorney-client privilege, work-product protection, or any other applicable privilege, immunity, or protection. The parties further agree to follow the procedures set forth in FED. R. CIV. P. 26(b)(5)(B) for the inadvertent disclosure of information subject to the attorney-client privilege, work-product protection, or any other applicable privilege, immunity, or protection.

**Foreign Discovery/Service:** To facilitate efficient discovery and service of foreign parties, Bestway has agreed that related foreign entities Bestway Global Holding, Inc. and Bestway (Hong Kong) International, Ltd. will voluntarily participate in discovery in this matter through Bestway's undersigned counsel, reserving all rights to contest the propriety of any such proposed discovery.

**t.**    **Patent Cases**

Exhibit A attached hereto provides the parties' proposed dates and methodology for claim construction.

**u.**    **Magistrate Consent**

The parties decline to consent to the entire matter being presided over by a magistrate for this case.

### v. Limitations on arguments and defenses

**Plaintiff's Position:**

Bestway's request to limit Intex's asserted claims in this case is unjustified and premature. At most, this case will involve 40 patent claims. Bestway cannot reasonably allege (and, in fact, does not do so) that litigating a case involving 40 patent claims poses an unmanageable burden. *See Jiaxing Super Lighting Elec. Appliance Co., Ltd. et al. v. Maxlite, Inc.*, LACV 19-4047 PSG (MAAx), p. 1 (C.D. Cal. Mar. 31, 2020), ECF No. 59 ("In determining whether to require parties [to] limit the number of claims asserted, courts look to the number of patents and claims at issue and the feasibility of trying the claims to a jury."). Moreover, this case is still in its infancy and the parties agree that fact discovery should not close until 16 weeks after the Court's *Markman* decision. In light of the significant discovery yet to be conducted in this case, Intex respectfully submits that the Court should decline to impose claim limits on this case, as courts in this District have done in the recent past. *See, e.g., Carl Zeiss et al. v. Nikon Corp et al.*, No. 2:17-cv-03221-RGK-MRW, p. 2 (C.D. Cal. Mar. 1, 2018), ECF No. 122 ("[I]n light of the discovery yet to be conducted in this case, the Court declines to impose claim limits at this time in the absence of the parties' joint agreement.").

Alternatively, Intex proposes the following modifications to the schedule in Ex. A for limiting the number of asserted claims and prior art references in this matter:

- Bestway shall serve Noninfringement Contentions with its Invalidity Contentions;
- 1 week after Bestway serves its Noninfringement Contentions and Invalidity Contentions, Intex shall make an election of asserted claims not to exceed 25 total claims, and Bestway shall make an election of asserted prior art not to exceed 25 total references;

- With its Final Infringement Contentions, Intex shall make a final election of asserted claims not to exceed 20 total claims of the previously selected 25 claims, and, with its Final Invalidity Contentions, Bestway shall serve Final Non-infringement Contentions and make an election of asserted prior art not to exceed 20 total references; and

- Any request to bring non-selected claims back into this matter for adjudication must be made pursuant to the normal requirements of motion practice before this Court, and requires a good cause showing that a non-selected claim presents unique issues of infringement or invalidity.

*See, e.g., Jiaxing*, LACV 19-4047 PSG (MAAx), pp. 3–4 (ordering a similar schedule).

To the extent the Court determines that it must impose limitations at this time (which Intex respectfully disagrees with, as explained above), this alternative proposal is more consistent with the actions of other courts than Bestway's proposal for at least two reasons. First, it imposes limits on the asserted claims only after the service of the invalidity and noninfringement contentions. As other courts have found, "Plaintiffs deserve the opportunity to make their representative claim determination on adequate information, including after being put on notice of Defendants' preliminary positions regarding patent invalidity for the asserted independent claims [the court also required non-infringement contentions to be served with invalidity contentions]." *Jiaxing*, LACV 19-4047 PSG (MAAx), p. 2; *see also Carl Zeiss*, No. 2:17-cv-03221-RGK-MRW, p. 2 (noting the non-infringement contentions required in the case). Indeed, even the authority Bestway cites recognizes this basic notion of fairness. *See Universal Elec. Inc. v. Roku Inc.*, SACV 18-1580 JVS (ADx), 2019 WL 1878351, at *2 (C.D. Cal. Mar. 14, 2019) (ordering claim reduction only *after* "invalidity contentions, and core technical documents have been exchanged"). Second, it recognizes the well-established law

that limitations on asserted claims cannot be "immutable" and must be accompanied by a safety-valve mechanism whereby additional claims can be asserted upon a showing of need.[2] *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312–13 (Fed. Cir. 2011). Yet again, even the authority Bestway cites recognizes this established law. *See Thought, Inc. v. Oracle Corp.*, Case No. 12-cv-05601-WHO, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013) ("Importantly, the reduction in asserted claims is not immutable.").[3]

**Defendant's Position:**

Intex proposes that it be allowed to initially assert 25 of the potential 40 claims and later that it be required to narrow that to 20 claims for a final determination, despite the two patents being related and containing nearly identical claims. Bestway contends that more reasonable limitations on the asserted claims and prior art references should be imposed to assist in managing the scope of this case, and promote judicial efficiency and economy. The parties' dispute centrally revolves around the timing of the parties' initial election to limit claims and references, and the express limits of the asserted claims and prior art references.

As common practice, District courts may limit the number of patent claims asserted in an action for patent infringement for the sake of judicial economy and management of a court's docket. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011); *see also Stamps.com Inc. v. Endicia, Inc.*, 437 Fed. Appx. 897, 902 (Fed. Cir. 2011); *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471 RSWL RZX, 2013 WL 3322248, at *1 (C.D. Cal. Apr. 5, 2013) (collecting cases). District Courts have further incentive to limit the asserted claims

---

[2] And, to reiterate, this is part of the reason why Intex respectfully submits that limiting the asserted claims now is unjustified, as it would be inefficient. *See, e.g., Jiaxing*, LACV 19-4047 PSG (MAAx), p. 2 ("Requiring an earlier claim narrowing could not only be prejudicial, but inefficient in that it would increase the likelihood of later requests to bring non-selected claims back for adjudication.").

[3] If it would be helpful to the Court, Intex also welcomes the opportunity to brief this issue in separate briefing.

when the patents are related and contain nearly identical claims, as they are in the instant action. *See, e.g., Thought, Inc. v. Oracle Corp.*, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013).

Defendant proposes the following limitations to the number of asserted claims:

- Consistent with the current schedule below, four weeks after the disclosure of Initial Disclosures, Patentee shall serve its Initial Patent Infringement Contentions which shall not to exceed 16 claims total.
- Consistent with the current schedule below, four weeks after the *Markman* Order is issued, Patentee shall serve Final Patent Infringement Contentions and Final Election of Asserted Claims, which shall not exceed 8 claims total of the previously selected 16 claims.

Defendant proposes the following limitations to the number of prior art references:

- Defendant is willing to correspondingly limit the number of asserted prior art commiserate to the limitations on the number of asserted claims. Accordingly, Defendant would propose 2 prior art references per each asserted claim i.e. if Plaintiff is allowed to assert 5 claims, Defendants would get a total of 10 references. This 2:1 ratio is common within patent litigation as dependent claims contain additional limitations that often require multiple prior art to invalidate. *See UEI*, 8:18-cv-01580-JVS-ADS (Dkt. 61) ("Invalidity arguments based on obviousness for a single claim often require a combination of two, three, or more prior art references. *See KSR Int'l v. Teleflex*, 550 U.S. 398, 420 (2007) ('Often, it will be necessary for a court to look to interrelated teachings of multiple patents" to evaluate obviousness.'"). This is also consistent with the 2:1 ratio established in Plaintiff's cited authority. *Jiaxing*, LACV 19-4047 PSG (MAAx), pp. 2-3.

While Plaintiff objects to the timing of initial elections, Defendant notes that it's unilaterally applied to both parties, so that neither party is unfairly disadvantaged. Moreover, limitations at an earlier stage allow the parties to more quickly and efficiently focus on the actual issues at hand instead of spending time and money on claims and prior art that will eventually be dropped. Specifically, the Plaintiff will not have to draft infringement contentions for claims it will not continue to assert, and the Defendant will not have to engage in a search for prior art and create invalidity charts for claims that the Plaintiff will merely drop two weeks later. Finally, the Defendant's proposed schedule still allows the Plaintiff the opportunity to make their representative claim determination on adequate information after being put on notice of Defendant's preliminary positions regarding patent invalidity for the asserted independent claims, because the final election of asserted claims isn't until after the Court issues the *Markman* Order. This is in contrast with the *UEI* case cited by both parties, where the Court only allowed a single election of claims and prior art references prior to claim construction.

    Even if the Court is inclined to go with Plaintiff's proposed schedule, Defendant contends the number of proposed claims is inappropriate given the scope of the instant action involving two related claims with nearly identical terms. Defendant proposed reduction in the number of asserted claims for judicial economy and efficiency is more consistent with the handling of similarly situated patent cases in the Central District involving related patents involving similar claims, as well as Fed. R. Civ. P. 1 and 26(c)(2)(A) and (P). *See Medtronic,* 2013 WL3322248, at *3 (reducing 255 claims to four claims for each of the nine patents in suit and then two claims for each patent after the submission of non-infringement and invalidity contentions); *UEI v. Roku*, 8:18-cv-01580-JVS-ADS (Dkt. 61) (narrowing to 25 asserted claims across 9 patents.) Even Plaintiff's own cited authority limited the number of asserted claims to 35 spread across 6 patents. This is twice the ratio

proposed by the Plaintiff. Unsurprisingly, Plaintiff offers no legal support for the 12/13 asserted claims per patent.

Finally, Defendant expressly rejects the premise that it should be required to serve non-infringement contentions. Initially, Defendant will note that this was never discussed during the parties' initial Fed. R. Civ. P. 26 meet and confer, nor any of the subsequent telephonic conversations the parties had regarding the Fed. R. Civ. P. 26 report, and instead was unilaterally included by the Plaintiff in later drafts without any substantive discussion.

Substantively, Plaintiff offers no support for the proposition requiring Defendant to provide non-infringement contentions other than single case that offers no rationale or analysis for the unorthodox inclusion of the non-infringement contentions. In the other case cited by the Plaintiff, *Carl Zeiss*, the parties stipulated to providing non-infringement contentions. Typically, parties explore both non-infringement and validity through contention interrogatories. However, to the extent the Court is going to formally Order the Defendant to respond to Plaintiff's infringement contentions with non-infringement contentions, Defendant requests that this court also order the Plaintiff to respond to Defendant's invalidity contentions with validity contentions.

Dated: April 24, 2020  **FAEGRE DRINKER BIDDLE & REATH LLP**

By:  */s/ Reid E. Dodge*
Reid E. Dodge (*pro hac vice*)

*Attorneys for Plaintiff*
Intex Recreation Corp.

Dated: April 24, 2020  **DICKINSON WRIGHT PLLC**

By:  */s/ Steven A. Caloiaro*
Steven A. Caloiaro (*pro hac vice*)

*Attorneys for Defendants*
Bestway (USA), Inc. and Bestway Inflatables & Materials Corp.

**ATTESTATION**

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

    */s/ Reid E. Dodge*

- 19 -