**DICKINSON WRIGHT PLLC**
Steven A. Caloiaro, Bar No. 284410
scaloiaro@dickinsonwright.com
100 West Liberty Street, Suite 940
Reno, Nevada  89501-1991
Tel: (775) 343-7500
Fax: (844) 670-6009

John S. Artz, (*pro hac vice*)
Email: JSArtz@dickinsonwright.com
350 S. Main Street, Suite 300
Ann Arbor, MI 48107
Tel: (734) 623-7075

**REDACTED VERSION OF
DOCUMENT FILED
UNDER SEAL**

*Attorneys for Defendants Bestway
(USA) Inc., and Bestway Inflatables
and Material Corporation*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| INTEX RECREATION CORP., <br><br> Plaintiff, <br><br> v. <br><br> BESTWAY (USA) INC., and BESTWAY INFLATABLES & MATERIALS CORPORATION, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM. | Case No.: 2:19-cv-08596-JAK-E <br><br> **L.R. 37-2 JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR SANCTIONS DUE TO PLAINTIFF'S SPOLIATION OF EVIDENCE AND REQUEST FOR CASE ENDING SANCTIONS PURSUANT TO FED. R. CIV. P. 37(e)** <br><br> Discovery Cutoff Date: Sept. 12, 2024 <br> Pre-Trial Conference Date: TBD <br> Trial Date: TBD <br><br> Judge: Hon. John A. Kronstadt[1] <br> Hearing Date: September 9, 2024 <br> Hearing Time: 8:30 a.m. <br> Location: Ctrm 10C |

---

[1] Due to the subject matter at issue and nature of relief requested in the form of dispositive resolution, Bestway has noticed this Motion before the District Judge, rather than Magistrate Judge, assigned to this case. *See Quest Software, Inc. v.*

Please take notice that on September 9, 2024 at 8:30 a.m., or as soon thereafter as counsel may be heard, Defendants Bestway (USA) Inc., and Bestway Inflatables & Material Corporation (collectively, "Bestway") shall and hereby move the Court for an order pursuant to Federal Rule of Civil Procedure 37(e) imposing case ending sanctions against Plaintiff Intex Recreation Corp. ("IRC") due to IRC's spoliation of evidence. This Motion is based on this Notice of Motion and Supporting Memorandum of Points of Authorities, the accompanying Declaration of Steven A. Caloiaro ("Caloiaro Decl.") and its attached exhibits[2], and such other written or oral argument and evidence as may be presented at or before the time this Motion is deemed submitted to the Court.

This Motion is made following the conference of counsel required by L.R. 7-3, which took place on April 15, 2024 following correspondence between counsel on the issue. Counsel for Plaintiff informed counsel for Defendants that Plaintiff opposes this Motion.

Dated: June 12, 2024

DICKINSON WRIGHT PLLC

*/s/ Steven A. Caloiaro*
Steven A. Caloiaro, CA Bar No. 284410
100 West Liberty Street, Suite 940
Reno, Nevada 89501-1991
Tel: (775) 343-7500
scaloiaro@dickinsonwright.com

*Attorneys for Defendants Bestway (USA) Inc., and Bestway Inflatables and Material Corporation*

---

*DirecTV Operations, LLC*, 2011 WL 13227819, at *3 (C.D. Cal. Dec. 13, 2011)(Magistrate judge declining to consider Defendant's request for evidentiary sanctions under Rule 37 because "such sanctions may have a terminating or dispositive effect on certain claims or issues […] [which] "must be presented to the assigned district judge.")

[2] Pursuant to L.R. 37-2.1, a compilation of the Scheduling and Case Management Orders entered to date are attached to the Declaration of Steven A. Caloiaro ("Caloiaro Decl.") as Exhibit J.

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

    A.     Bestway's Introductory Statement .................................................1

    B.     IRC's Introductory Statement ..........................................................3

II.    LEGAL STANDARD ........................................................................................7

    A.     Bestway's Legal Authority ................................................................7

    B.     IRC's Legal Authority .......................................................................7

III.   BESTWAY'S STATEMENT OF FACTS .........................................................9

    A.     BACKGROUND .................................................................................9

    1.     The Magistrate Grants Bestway's Motion to Compel Intex Xiamen ESI and Custodians, Including Tony Lin's ESI, Because IRC Has Legal Control. ......................................................................................................9

    2.     IRC Refuses to Produce the Intex Xiamen ESI and Custodians in Violation of the Magistrate's Order, While Withholding the Fact That Intex Xiamen Deleted Tony Lin's ESI. ....................................................11

    3.     IRC Informs Bestway That It No Longer Has Mr. Lin's ESI After The Court Denies IRC's Motion for Review Ordering IRC to Produce Intex Xiamen ESI and Custodians. ....................................................................13

IV.    IRC'S STATEMENT OF FACTS ...................................................................17

    A.     BACKGROUND ...............................................................................17

        1.     The Parties' Conduct in the Spa Case ...............................................18

        2.     The Parties' Conduct in the Bed Case...............................................21

V.     BESTWAY'S ARGUMENT...........................................................................29

    A.     IRC Failed to Preserve and Destroyed Mr. Lin's ESI...............................29

        1.     IRC's Duty to Preserve Mr. Lin's ESI Arose As Early As 2014 When IRC Knew Litigation Against Bestway Was Reasonably Foreseeable. ......................................................................................................................29

        2.     IRC Had a Duty to Instruct Intex Xiamen to Preserve Tony Lin's ESI. ......................................................................................................................31

    B.     The Court Should Sanction IRC For its Intentional Spoliation. ..............32

        1.     IRC Intentionally Concealed it Deleted Mr. Lin's ESI........................33

i

2. A Case Termination Sanction Is Warranted........................................37

VI.    IRC'S ARGUMENT .......................................................................42

A.    IRC Did Not Have a Duty to Preserve Mr. Lin's Lost ESI.....................44

1. As of 2014, IRC Had No Duty to Preserve Any Evidence in this Matter, Let Alone Evidence from a Non-Party....................................44

2. IRC's Duty to Instruct Intex Xiamen to Preserve ESI Did Not Arise Until the Court's Order Denying IRC's Motion For Review ............50

B.    Even If IRC had a Duty to Preserve Mr. Lin's ESI, Bestway Cannot Show that IRC had an Intent To Deprive Bestway, Making Case Terminating Sanctions Inapplicable............................................52

1. Bestway's Conspiracy Theory Regarding the "Timing" of any Alleged Spoliation Fails to Show The Requisite Intent.................................53

2. IRC's Conduct Does Not "Infer" Any Intent To Deprive .................57

C.    The "Severe" Remedy of A Case Termination Sanction Is Unwarranted. ...............................................................................62

1. To the Extent Any Spoliation Occurred (Which is Not True), It was Neither Willful nor Done in Bad Faith ...............................................62

2. The Malone Factors Do Not Favor Dismissal. ..................................66

3. Bestway has not Shown that Lesser Sanctions are Appropriate. ........79

VII.   CONCLUSION..............................................................................81

A.    Bestway's Position .......................................................................81

B.    IRC's Position .............................................................................81

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aberin v. Am. Honda Motor Co.*,
 2017 WL 6493095 (N.D. Cal. Dec. 19, 2017).......................................8

*Adriana Int'l Corp. v. Thoeren*,
 913 F.2d 1406 (9ᵗʰ Cir. 1990)..........................................................*passim*

*Ahearn v. Redondo Beach Police Dep't*,
 2009 WL 728463 (C.D. Cal. Mar. 18, 2009)..........................42, 67, 79

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
 69 F.3d 337 (9th Cir. 1995) ............................................................41, 78

*Apple Inc. v. Samsung Elecs. Co.*,
 881 F. Supp. 2d 1132 (N.D. Cal. 2012).................................35, 36, 57

*Apple Inc. v. Samsung Elecs. Co.*,
 888 F. Supp. 2d 976 (N.D. Cal. 2012).........................................8, 57

*Aramark Mgt., LLC v. Borgquist*,
 2021 WL 864067 (C.D. Cal. Jan. 27, 2021) .....................................8

*Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*,
 2013 WL 12129368 (C.D. Cal. Feb. 20, 2013) ...............................79

*Cheren v. Compass Bank*,
 2012 WL 5381445 (D. Ariz. Nov. 2, 2012) ....................................64

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ........................6, 38, 62

*Compass Bank v. Morris Cerullo World Evangelism*,
 104 F. Supp. 3d 1040 (S.D. Cal. May 8, 2015) .............................76

*Computer Task Grp. Inc. v. Brotby*,
 364 F.3d 1112 (9th Cir. 2024) .......................................................78

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
 482 F.3d 1091 (9th Cir. 2007) ...........................................37, 39, 41, 60

*Cordis Corp. v. Boston Sci. Corp.*,
    561 F. 3d 1319 (Fed. Cir. 2009) ........................................................................70

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
    2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) ..............................................29, 32

*In re Eisen*,
    31 F.3d 1447 (9th Cir. 1994) .............................................................................68

*Facebook, Inc. v. OnlineNIC Inc.*,
    2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ......................................36, 38, 61

*Felman Prod., Inc. v. Indus. Risk Insurers*,
    2011 WL 4547012 (S.D.W. Va. Sept. 29, 2011).............................31, 32, 51, 52

*Gault v. United States*,
    2022 WL 4292340 (C.D. Cal. Aug. 23, 2022) .............................................53, 75

*Gelazela v. Santa Ana Police Dep't*,
    2024 WL 1136338 (C.D. Cal. Feb. 16, 2024) ...........................................*passim*

*Glover v. BIC Corp.*,
    6 F.3d 1318 (9th Cir. 1993)...............................................................................7

*In re Google Play Store Antitrust Litig.*,
    664 F. Supp. 3d 981 (N.D. Cal. 2023)................................................................45

*Halicki Films, LLC v. Sanderson Sales and Marketing*,
    547 F.3d 1213 (9th Cir. 2008) .....................................................................25, 65

*HighMark Digital, Inc. v. Casablanca Design Centers, Inc.*,
    2019 WL 13038414 (C.D. Cal. Oct. 3, 2019) .............................................46, 63

*HiQ Labs., Inc. v. LinkedIn Corp.*,
    639 F. Supp. 3d 944 (N.D. Cal. 2022)................................................................59

*Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*,
    540 F.3d 1337 (Fed. Cir. 2008) .........................................................................70

*Hugler v. Sw. Fuel Mgmt., Inc.*,
    2017 WL 8941163 (C.D. Cal. May 2, 2017).....................................................70

*Hyatt v. Boone*,
  146 F.3d 1348 (Fed. Cir. 1998) ........................................................................69

*J.S.T. Corp. v. Robert Bosch LLC*,
  2019 WL 2324488 (E.D. Mich. May 30, 2019) ...........................................79, 80

*Johnson v. L'Oreal USA*,
  2020 WL 5530022 (S.D.N.Y. Sept. 15, 2020) ..................................................53

*Jones v. Riot Hosp. Group LLC*,
  95 F.4th 730 (9th Cir. 2024)............................................................................8, 9

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
  863 F.2d 867 (Fed. Cir. 1988) .........................................................................56

*Laub v. Horbaczewski*,
  2020 WL 9066078 (C.D. Cal. July 22, 2020)....................................................47

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006).......................................................................passim

*Lucent Techs., Inc. v. Gateway, Inc.*,
  509 F. Supp. 2d 912 (S.D. Cal. 2007)...............................................................70

*Malone v. U.S. Postal Serv.*,
  833 F.2d 128 (9th Cir. 1987) ......................................................................passim

*Martinez v. Equinox Holdings, Inc.*,
  2021 WL 6882152 (C.D. Cal. Oct. 22, 2021) ...................................................47

*Medina v. Boeing Co.*,
  2022 WL 599021 (C.D. Cal. Jan. 27, 2022)...........................................9, 62, 70

*Microvention, Inc. v. Balt USA, LLC*,
  2023 WL 7476998 (C.D. Cal. Oct. 5, 2023) ...............................................passim

*Montoya v. Orange Cnty. Sheriff's Dep't*,
  2013 WL 6705992 (C.D. Cal. Dec. 18, 2013).............................30, 36, 57, 74

*N.T.A.A., et al., v. NORDSTROM, INC., et al.*,
  2024 WL 1723524 (C.D. Cal. Apr. 19, 2024) ............................................36, 60

v

*In re Napster, Inc. Copyright Litig.*,
  462 F.Supp.2d 1060 (N.D. Cal. 2006).................................................8, 46, 57, 60

*Newberry v. Cnty. Of San Bernardino*,
  750 F. App'x 534 (9th Cir. 2018) .....................................................................7

*Nursing Home Pension Fund v. Oracle Corp.*,
  254 F.R.D. 559 (N.D. Cal. 2008)....................................................................74

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  328 F.R.D. 543 (N.D. Cal. 2018)...............................................................72, 73

*Pauly v. Stanford Health Care*,
  2022 WL 4137579 (N.D. Cal. Aug. 22, 2022) ...........................................55, 56

*In re Phenylpropanolamine (PPA) Prods. Liability Litig.*,
  460 F. 3d 1217 (9th Cir. 2006) ...........................................66, 67, 68, 75

*Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del
  Estado*,
  2013 WL 3776971 (N.D. Ill. July 18, 2013) ............................................32, 52

*Porter v. City and County of San Francisco*,
  2018 WL 4215602 (N.D. Cal. Sept. 5, 2018)......................................58, 66, 80

*Price v. Peerson*,
  2014 WL 12558253 (C.D. Cal. Apr. 23, 2014) ................................................51

*Putscher v. Smith's Food & Drug Centers, Inc.*,
  2014 WL 2835315 (D. Nev. June 20, 2014) ....................................................50

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
  264 F.R.D. 517 (N.D. Cal. 2009)..................................................................8, 45

*Reed v. Clear Recon Corp.*,
  2019 WL 2579234 (N.D. Cal. June 24, 2019)...........................................77, 78

*Sanchez v. Rodriguez*,
  298 F.R.D. 460 (C.D. Cal. 2014)....................................................................39

*Smith v. Hoffman*,
  2017 WL 5957740 (N.D. Cal. Nov. 30, 2017) ................................................78

vi

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
  2011 WL 3714772 (C.D. Cal. Aug. 22, 2011) .................................................25

*Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*,
  2016 WL 4485568 (S.D. Cal. Aug. 19, 2016).................................30, 31, 46, 48

*Transamerica Life Ins. Co. v. Arutyunyan*,
  93 F.4th 1136 (9th Cir. 2024) .....................................................................9, 41, 77

*U.S. v. Maxxam, Inc.*,
  2009 WL 817264 (N.D. Cal. Mar. 27, 2009) .............................................*passim*

*Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*,
  602 F.3d 1325 (Fed. Cir. 2010) .........................................................................70

*Williams v. Cnty. of San Diego*,
  2019 WL 1499597 (S.D. Cal. Apr. 5, 2019) ......................................................80

*World Courier v. Barone*,
  2007 WL 1119196 (N.D. Cal. Apr. 16, 2007)....................................................32

**Rules**

Fed. R. Civ. P. 1 ....................................................................................................66

Fed. R. Civ. P. 37 ..........................................................................................*passim*

Fed. R. Civ. P. 37 2015 Amendment Committee Notes.....................................5, 50

Fed. R. Civ. P. 37(e) ......................................................................................*passim*

Fed. R. Civ. P. 37(e)(2)..................................................................................*passim*

Local Rule 37-1....................................................................................................28

# I.   INTRODUCTION

## A.   Bestway's Introductory Statement

On October 10, 2023, Bestway filed a Motion to Compel IRC to identify ESI custodians from third-party Intex Industries Xiamen Co. Ltd. ("Intex Xiamen") and produce ESI from Intex Xiamen custodians. (ECF No. 149, at ECF pp. 15-18.). In its Motion to Compel, Bestway specifically identified three relevant Intex Xiamen ESI Custodians, including named lead inventor of the Asserted Patents – Hua Hsiang ("Tony") Lin. (ECF No. 149, p. 19). On October 20, 2023, the Magistrate Judge granted the Motion to Compel (ECR No. 154), and this Court subsequently upheld that ruling in a string of orders requiring IRC to identify Intex Xiamen ESI custodians and produce the ESI requested, including Tony Lin's e-mails. (ECF Nos. 157 and 202).

Nearly six months after Bestway filed its Motion to Compel and for ***the very first time*** on April 1, 2024, IRC informed Bestway that Intex Xiamen no longer has possession, custody, or control of Mr. Lin's ESI. (ECF No. 219, ¶8). When Bestway first asked IRC to explain the circumstances surrounding the loss of Mr. Lin's e-mails (*e.g.*, when, why, and how Mr. Lin's e-mails were lost), IRC initially refused to answer. Finally, more than two weeks after informing Bestway it no longer had Mr. Lin's ESI, IRC admitted on April 25, 2024 that Mr. Lin's emails were deleted in        , four years after IRC's duty to preserve arose. Thus, while IRC fought tooth and nail to avoid producing the Intex Xiamen ESI (including Mr. Lin's e-mails) over the course of nearly six months, IRC was simultaneously withholding the fact that it had deleted the ESI specifically requested by Bestway and ordered by this Court.

IRC's actions demonstrate an egregious example of spoliation warranting strong sanctions. Indeed, both IRC and Intex Xiamen had a duty to maintain and

preserve Mr. Lin's ESI as early as 2014 when counsel for Intex Xiamen[3] first contacted Bestway about potential litigation regarding Mr. Lin's inventions. While IRC represents that Mr. Lin passed away in 2016, Mr. Lin's death does not eliminate the duty that arose two years earlier when Intex first threatened litigation and when Mr. Lin was very much alive. Moreover, the Court has affirmed that IRC has legal control over Intex Xiamen and therefore, IRC's duty to preserve information extends directly to Intex Xiamen on the basis of legal control as well.

IRC's spoliation is even more egregious considering: (1) IRC's blatant refusal to confirm whether it had instructed Intex Xiamen to preserve Mr. Lin's emails when Bestway **previously** asked on November 19, 2023 (ECF Nos. 164-2 and 164-3), raising then "serious concern regarding Intex's good faith intent to participate in the discovery process" (ECF No. 164, p. 11, fn. 2); (2) Intex's initial refusal to answer any questions regarding what IRC claimed was the **loss** of Mr. Lin's emails when, in fact, the emails had been **deleted** four years after Intex threatened suit; and (3) IRC's submission of sworn statements to this Court representing "that Intex Xiamen refuses to provide ESI from the Intex Xiamen Custodians," (ECF No. 149-3, ¶8) which included Tony Lin when, in reality, Intex Xiamen **could not** produce ESI from Tony Lin because it was intentionally destroyed. IRC then colluded with Intex Xiamen to avoid producing Tony Lin's ESI by entering into an Acknowledgement and Agreement purporting to "un-do" their previous Assignment contract requiring Intex Xiamen "to cooperate with [IRC] in every way possible in obtaining evidence and going forward with […] litigation" regarding the Asserted Patents. (ECF No. 144-6, at p. 7).

---

[3] Intex Xiamen's employees, inventors of the '240 Patent, were obligated to—and did—assign the '240 Patent to Intex Xiamen, thereby triggering a duty to preserve relevant ESI and documents. (*See* Exhibit C defined further herein).

IRC's egregious conduct has severely prejudiced Bestway. Tony Lin's ESI cannot be recovered, and Bestway has no way to obtain this information through other means of discovery. IRC's actions have tainted the integrity of these proceedings warranting the severest sanction of case termination under Rule 37(e). As such, this Court should dismiss this action. Alternatively, the Court should issue a strong adverse inference instruction, and preclude IRC from relying or presenting documents from Intex Xiamen related to the development and history of the Asserted Patents, as well as documents related to research, design, and conception, as well as documents related to damages in Intex Xiamen's possession, such as manufacturing costs.

## B.   IRC's Introductory Statement[4]

Bestway's motion relies on a tangled web of heated rhetoric, mischaracterizations, unsupported conspiracy theories, and an incorrect application of the law to arrive at the conclusion that case terminating sanctions are appropriate here. Based on the record facts and a proper application of the law, Bestway's motion should be denied.

First, IRC's duty to preserve did not arise until *after* Mr. Hua Hsiang ("Tony") Lin's ESI was lost in the ordinary course of Intex Xiamen's business; thus, no

---

[4] Bestway's motion also violates the Court's Order Re: Joint Status Report in which the Court instructed the parties to meet and confer, "file an updated joint status report as to any developments in the discovery process," and then file "any related motion(s) or application(s) that arise from any ongoing discovery disputes stated in the updated joint status report." (ECF No. 222.) Bestway's motion addresses an ongoing discovery dispute previously stated in joint status reports (*see, e.g.,* ECF No. 219, at 6:3-15; ECF No. 235) and, thus, should have been addressed in Bestway's 10-page brief. When IRC's counsel raised this issue with Bestway's counsel, Bestway's counsel provided no explanation for why this issue was not subject to the Court's Order in ECF No. 222, and despite the parties meeting and conferring on this issue again on May 23, 2024, Bestway refused to include the issues raised in this motion in the May 31, 2024 Joint Status Report.

1   spoliation occurred. Specifically, IRC's duty to preserve in this Matter arose in June
2   2019,
3
4
5
6
7   . As a result of t
8   , Mr. Lin's ESI was lost.

9        Bestway asserts that IRC had a duty to preserve evidence in this case as of
10  2014—*three years prior* to the introduction of the accused products at issue in this
11  case and *five years prior* to when
12  . Bestway's argument
13  is based on letters IRC sent to Bestway regarding *different* products than are at issue
14  in this case that led to the filing of *different* actions. This argument is nonsensical,
15  as it is contrary to law and reason. Therefore, applying the proper legal framework,
16  IRC's duty to preserve arose no earlier than June 2019 and there can be no finding
17  of spoliation here because there is no dispute that Mr. Lin's ESI was lost on
18  .

19        Additionally, even if IRC did have a duty to preserve before Mr. Lin's ESI
20  was lost on                (it did not), that duty did not extend to preserving
21  evidence of Intex Xiamen ESI—
22  .
23  Bestway asks this Court to retroactively apply its March 2024 Order (ECF No. 202)
24  by a decade and find that IRC's duty to preserve the Intex Xiamen ESI arose in 2014.
25  However, throughout both the Spa Case and this Matter, IRC has held the reasonable
26  belief that it does not have possession, custody, or control of Intex Xiamen's ESI—
27  including the ESI of Mr. Lin. Indeed, for years, Bestway did not even dispute that
28

1   position. It was not until the Court's March 2024 Order (ECF No. 202) finding that

2   IRC had control over Intex Xiamen ESI, based on a single boilerplate provision in

3   an assignment agreement, that IRC's duty to preserve the same was triggered. *See*

4   *e.g.* Fed. R. Civ. P. 37 2015 Amendment Committee Notes ("The duty to preserve

5   may in some instances **be triggered or clarified by a court order** in the case.")

6   (emphasis added). Therefore, in accordance with the 2015 Amendment Committee

7   Notes to Rule 37, IRC's duty to instruct Intex Xiamen to preserve ESI did not arise

8   until this Court's March 2024 Order.

9          Second, even if IRC did have a duty to preserve before Mr. Lin's ESI was lost

10  on                      (it did not), and even if that duty to preserve extended to non-party

11  Intex Xiamen (which is based in China, has no U.S. presence, and has no corporate

12  relationship to IRC) (it does not), IRC had no intent to deprive Bestway of such

13  information, which makes case terminating sanctions improper. Specifically, since

14  Bestway is seeking case terminating sanctions under Rule 37(e)(2), Bestway must

15  show that IRC "acted with the intent to deprive another party of the information's

16  use in litigation." Fed. R. Civ. P. 37(e)(2) (noting that "dismissal" is only available

17  upon finding that the party "acted with the intent to deprive another party of the

18  information's use in litigation."). Despite Bestway's unsupported conspiracy

19  theories about IRC's alleged intent to deprive, the only facts in this case establish

20  that: (1)

21

22

23                      ; (2) IRC (and Intex Xiamen) shared the good-faith, long-held belief that

24  IRC did not have control over Intex Xiamen ESI; (3)

25                                      ; and (4) within days, IRC's counsel notified

26  Bestway's counsel of Mr. Lin's lost ESI. As such, there is no evidence to support

27

28

1 Bestway's bald assertion that IRC acted with the intent to deprive Bestway of the
2 information's use in litigation.

3      Third, the very severe remedy of case terminating sanctions is not appropriate
4 because Bestway utterly fails to show that this is one of the "most egregious cases
5 of misconduct." *See Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL
6 1496444, at *12 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted,
7 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).  Again, Bestway's entire argument
8 hinges on the following: (1) that IRC had a duty to preserve evidence prior to
9           (which is not true,
10   ); and (2) that IRC's duty to preserve
11 evidence extended to non-party Intex Xiamen, which is based in China, has no U.S.
12 presence, and has no corporate relationship to IRC (which is not true because IRC
13 had a good-faith belief that it did not have control over Intex Xiamen ESI until this
14 Court's March 2024 Order finding control based on a boilerplate provision in an
15 assignment agreement). Even if established (which is not true), Bestway's argument
16 for case terminating sanctions further hinges on the following: (1) that IRC intended
17 to deprive Bestway of Mr. Lin's ESI (which is not true,
18   ); and (2) that IRC's conduct was
19 "due to willfulness or bad faith" (which is not true, as IRC had a good-faith belief
20 that it did not have control over Intex Xiamen ESI until this Court's March 2024
21 Order finding control based on a boilerplate provision in an assignment agreement
22 and
23   ). While Bestway asserts that this is an egregious case of
24 spoliation at least because IRC violated Court Orders and IRC "colluded with" Intex
25 Xiamen to deprive Bestway of Mr. Lin's ESI, these statements are unsupported and
26 inaccurate. IRC has not violated any Court Orders in this Matter and has continually
27
28

1  attempted to follow this Court's Orders in good faith. The *Malone* factors confirm
2  that case terminating sanctions are not appropriate.

3      For the foregoing reasons, as explained in more detail below, IRC respectfully
4  requests that the Court deny Bestway's motion.

5  **II.   LEGAL STANDARD**

6      **A.    Bestway's Legal Authority**

7      "Spoliation occurs when a party destroys, significantly alters, or fails to
8  preserve evidence after its duty to preserve arose." *Microvention, Inc. v. Balt USA*,
9  *LLC*, 2023 WL 7476998, at *2 (C.D. Cal. Oct. 5, 2023)*, report and recommendation*
10 *adopted,* 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023)(*citing Apple Inc. v. Samsung*
11 *Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012)).

12     While a district court may sanction a party for spoliation under "the inherent
13 power of federal courts to levy sanctions in response to abusive litigation practices,
14 *and* […] under Rule 37'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006),
15 Rule 37(e) forecloses reliance on a court's inherent power for the *spoliation of ESI*.
16 *See* Fed. R. Civ. P. 37(e), Advisory Committee's Note to 2015 Amendment ("Rule
17 37(e) Advisory Committee Note"). Therefore, the language of Rule 37(e) forecloses
18 the reliance on the court's "'inherent authority' to determine whether terminating
19 sanctions were appropriate." *Newberry v. Cnty. Of San Bernardino*, 750 F. App'x
20 534, 537 (9th Cir. 2018).

21     Available sanctions include: (1) dismissing the spoliating party's claims or
22 defenses, *Leon*, 464 F.3d at 959 (2) excluding testimony or evidence based on the
23 spoliation, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); and (3) instructing
24 the jury to infer that evidence destroyed or suppressed was adverse to the party who
25 destroyed it. *Id.*; *see also* Fed. R. Civ. P. 37(e).

26     **B.    IRC's Legal Authority**

27     "Spoliation occurs when a party destroys, significantly alters, or fails to

28

preserve evidence after its duty to preserve arose." *Aramark Mgt., LLC v. Borgquist*, 2021 WL 864067, at \*4 (C.D. Cal. Jan. 27, 2021), *report and recommendation adopted*, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021) (citing *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

"Although the Ninth Circuit has not precisely defined when the duty to preserve is triggered, trial courts in this Circuit generally agree [the duty is triggered] '[a]s soon as a potential claim is identified. . . .'" *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 991 (N.D. Cal. 2012) (citing *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006)). "The future litigation must be 'probable,' which has been held to mean 'more than a possibility.'" *In re Napster*, 462 F.Supp.2d at 1068 (citation omitted). "[T]he fact that someone *could* file a complaint or *might* file a complaint is not enough" to trigger the duty to preserve. *See Aberin v. Am. Honda Motor Co.*, 2017 WL 6493095, at \*2 (N.D. Cal. Dec. 19, 2017). Put differently, a "general concern over litigation does not trigger a duty to preserve evidence." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009). Additionally, a party "cannot be held liable for evidence that was destroyed or lost before they had an obligation to preserve it." *See U.S. v. Maxxam, Inc.*, 2009 WL 817264, at \*14 (N.D. Cal. Mar. 27, 2009).

Under Federal Rule of Civil Procedure 37(e)(2), when ESI has been destroyed or lost that should have been preserved, a court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment" but "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation."

The Ninth Circuit has explained the "intent to deprive" as "most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Group LLC*, 95 F.4th

730, 735 (9th Cir. 2024) (citing Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment). Indeed, the Advisory Committee's Note to the 2015 amendment to Rule 37 (which is in effect today) states that subdivision (e)(2) "rejects cases such as Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Jones*, 95 F.4th at 735 (citing *Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020)).

"Terminating sanctions are a severe remedy and should be imposed only in extreme circumstances." *Medina v. Boeing Co.*, 2022 WL 599021, at *5 (C.D. Cal. Jan. 27, 2022). Specifically, to warrant case terminating sanctions, the party's conduct must be "due to willfulness or bad faith." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.5 (9th Cir. 1990).The Ninth Circuit has "identified five factors that a district court must consider before dismissing a case or declaring a default: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [other party]; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024) (quoting *Adriana*, 913 F.2d at 1412).

## III. BESTWAY'S STATEMENT OF FACTS

### A. BACKGROUND

#### 1. The Magistrate Grants Bestway's Motion to Compel Intex Xiamen ESI and Custodians, Including Tony Lin's ESI, Because IRC Has Legal Control.

On March 21, 2023, the Court entered and signed the parties' stipulated ESI Order, requiring the parties to "exchange a listing of all likely e-mail custodians and

a specific identification of the seven most significant listed email custodians…" (ECF No. 108, p. 11). Intex refused to comply with this provision, identifying only four email custodians ("IRC ESI Disclosure"), none from Intex Xiamen and none of whom are described as having a role in product development/R&D.

On April 4, 2023, Bestway served its ESI Production Requests ("ESI Requests"), noting Intex's failure to identify seven ESI custodians per the ESI Order. Bestway reserved the right to identify and use "placeholder custodians until Intex properly complies with the ESI Order," which Intex never did. (ECF No. 144-4, p. 3). Bestway also identified three additional custodians—each employed by Intex Xiamen—that IRC should have listed, but did not, including Tony Lin, a named inventor of the Asserted Patents (*Id.* at p. 5).

Despite Bestway's requests, IRC refused to supplement or amend its ESI Disclosure to identify seven email custodians per the ESI Order, and refused to collect and produce any ESI from non-IRC employees, including the named inventor Tony Lin. Accordingly, Bestway filed its Motion to Compel in a L.R. 37-2.1 joint stipulation, specifically requesting IRC identify ESI custodians and produce emails "maintained by ESI custodians employed by […] Intex Xiamen" because IRC "has the legal right to obtain this ESI." (ECF No. 149, p. 41). Similar to its ESI Requests, Bestway's Motion to Compel specifically identified Tony Lin as an Intex ESI custodian that IRC should have disclosed, and whose ESI should be produced. (ECF No. 149, pp. 18-19).

In its attempts to avoid producing ESI from Intex Xiamen, IRC submitted the declaration of Intex Xiamen employee Chris Hsu ("Mr. Hsu")—another inventor of the Asserted Patents—in support of its portion of the joint stipulation opposing the Motion to Compel.

As such, IRC and Intex Xiamen led Bestway—and the Court—to believe, or assume, that ESI from the Intex Xiamen Custodians, including Mr. Lin, still existed, but that Intex Xiamen merely refused to provide it.

On October 20, 2023, the Magistrate granted Bestway's Motion to Compel, finding that IRC had legal control over "Intex Xiamen's custodians and Intex Xiamen's ESI." (ECF No. 154, p. 7).

**2.  IRC Refuses to Produce the Intex Xiamen ESI and Custodians in Violation of the Magistrate's Order, While Withholding the Fact That Intex Xiamen Deleted Tony Lin's ESI.**

After the Magistrate granted Bestway's Motion to Compel ("Discovery Order"), IRC refused to produce the ordered ESI from Intex Xiamen. Instead, IRC filed an *Ex Parte* Application for Stay ("Application for Stay") seeking to stay enforcement of the Discovery Order. (ECF No. 155). However, this Court denied the Application for Stay and ordered IRC to "begin[…] the identification and collection process" of the Intex Xiamen custodians and ESI. (ECF No. 157, p. 2). Yet again, IRC refused to produce the ordered ESI from Intex Xiamen. As such, Bestway filed a Motion to Show Cause, seeking to hold IRC in civil contempt for its failure to comply with the ESI Order, the Discovery Order, and the Court's Order denying IRC's Application for Stay. (ECF No. 164).

IRC filed a Motion for Review of the Discovery Order ("Motion for Review") challenging the Discovery Order on November 10, 2023. (ECF No. 158). In support of its Motion for Review, IRC submitted the declaration of Mr. Whalen dated November 9, 2023. Similar to the declaration of Mr. Hsu, Mr. Whalen attested that

1   after the Magistrate granted Bestway's Motion to Compel, he "requested that Intex

2   Xiamen produce ESI from […] Hua Hsiang [Tony] Lin…" (ECF No. 158-3, ¶6).

3   Mr. Whalen further attested that Mr. Hsu responded, "Intex Xiamen refuses to

4   produce ESI from the Bestway Identified Xiamen Custodians…" (*Id.*, at ¶7). Again,

5   neither IRC nor Intex Xiamen informed Bestway or the Court that Intex Xiamen, in

6   fact, could not produce Tony Lin's ESI because it was destroyed.

7         In addition to Mr. Whalen's declaration, IRC and Intex Xiamen also submitted

8   an "Acknowledgement and Agreement"—signed the same day IRC filed its Motion

9   for Review (ECF No. 158-2)—purporting to "un-do" the previous Assignment

10  contract requiring Intex Xiamen "to cooperate with [IRC] in every way possible in

11  obtaining evidence and going forward with […] litigation" regarding the Asserted

12  Patents. (ECF No. 144-6, at p. 7). Suspecting foul play, counsel for Bestway

13  specifically asked counsel for IRC to "state whether Intex has preserved the emails

14  of Hua Hsiang [Tony] Lin" in an email dated November 19, 2023. (ECF No. 164-2,

15  p. 3). While counsel for IRC responded on November 22, 2023, counsel's response

16  never addressed whether Tony Lin's emails were preserved. (*Id.* at p. 2).

17        Bestway raised this issue in its Motion to Show Cause, arguing that Intex's

18  refusal "to confirm that it has instructed Intex Xiamen to preserve the emails of Hua

19  Hsiang [Tony] Lin […] gives serious concern regarding Intex's good faith intent to

20  participate in the discovery process." (ECF No. 164, p. 11, fn. 2). Instead of coming

21  clean and admitting that it had deleted Tony Lin's emails, IRC once again refused

22  to confirm whether it preserved Mr. Lin's emails, arguing instead that because Mr.

23  Lin passed away before this case was initiated, no "preservation obligations

24  attach…" (ECF No. 179, p. 10, fn. 2).[5]

25

26  [5] This is another example of Intex's efforts to mislead Bestway and the Court on this
27  issue. Indeed, the fact that Mr. Lin passed away before *this* case was filed is
28  irrelevant as Intex Xiamen did not destroy his ESI until 2018 (as explained further

IRC also argued that because it has no control over Intex Xiamen, IRC "has no authority to require Intex Xiamen to preserve information." (*Id.*) This argument, however, was squarely rejected by the Court in its order denying IRC's Motion for Review. (ECF No. 202)

**3.**  **IRC Informs Bestway That It No Longer Has Mr. Lin's ESI *After* The Court Denies IRC's Motion for Review Ordering IRC to Produce Intex Xiamen ESI and Custodians.**

On March 11, 2024, this Court denied IRC's Motion for Review, affirming the Magistrate's ruling that "IRC has the legal right to obtain…" ESI from Intex Xiamen. (ECF No. 202, p. 11). The Court also deferred its ruling on Bestway's Motion to Show Cause, stating it would provide IRC "a final opportunity to comply with the Magistrate Order," and ordering the parties to file a joint report stating their views regarding the status of IRC's efforts to obtain the requested ESI from Intex Xiamen. (*Id.*)

Prior to filing the joint report, counsel for IRC informed Bestway on March 20, 2024 that, "in a good faith effort to abide by the Court's order, Intex Xiamen has agreed to provide the requested ESI for **the three custodians** to the extent such information is in Intex Xiamen's custody, possession, or control…" (ECF No. 212-1, p. 2)(emphasis added). Yet, IRC did not inform Bestway that Intex Xiamen destroyed Tony Lin's ESI—one of the "three custodians" referenced in IRC counsel's email—despite Bestway previously asking for confirmation months prior in November of 2023. (ECF No. 164-2, p. 3). Again, counsel for Bestway criticized IRC in an email dated March 26, 2024 for failing to "confirm that you have preserved Xiamen ESI as we requested back in December." (ECF No. 212-2, p. 2).[6] Yet again, IRC failed to inform Bestway that Intex Xiamen destroyed Tony Lin's ESI.

---

herein) – two years after IRC filed the 3950 Litigation accusing Bestway of infringing the same '240 Patent Mr. Lin invented.

[6] On March 25, Intex's counsel sent an email demanding a retraction of a statement that Bestway had placed in a brief regarding Intex's failure to produce ESI. In both

It was not until April 1, 2024—after (i) the issue of producing Intex Xiamen's ESI had been pending for several months; (ii) after IRC and Intex Xiamen represented in multiple declarations that Intex Xiamen was refusing to produce ESI belonging to Tony Lin – not that it no longer existed; and (iii) after blatantly ignoring Bestway's multiple requests to confirm that Intex Xiamen had preserved Tony Lin's ESI—that IRC finally admitted that Intex Xiamen no longer had Tony Lin's ESI. (Caloiaro Decl., **Exhibit A**,[7] at pp. 4-5). Other than stating Mr. Lin passed away in 2016 – two years before Intex deleted his ESI – IRC provided no explanation as to why Intex Xiamen no longer has possession of his ESI, despite representing multiple times that IRC has specifically requested Intex Xiamen produce Mr. Lin's ESI. (*Id.*)

In response to IRC's revelation, counsel for Bestway asked IRC's counsel to meet and confer on the loss of Mr. Lin's ESI, and to provide answers to the following questions:

> As of what date did Intex Xiamen no longer have possession, custody, or control of any of Mr. Lin's e-mails?

> How did Intex Xiamen lose possession, custody, or control of Mr. Lin's e-mails?

> Does any other entity have possession, custody, or control of any of Mr. Lin's e-mails?

> What efforts were made to preserve Mr. Lin's ESI after October 2, 2014?

---

informal correspondence as well as a formal filed response, Bestway highlighted the fact that despite Intex's agreement to produce ESI for the three Intex custodians there were still several issues, equivocations, caveats, and reservations of rights on the Qualified Offer. (ECF No. 215). One of those issues specifically identified was that, "For the first time, Intex has raised the potential that Intex Xiamen does not have has possession custody or control of the ESI – 'to the extent such information is in Intex Xiamen's custody, possession, or control...' (ECF 212-1.)" (*Id.* at p. 3).

[7] The email chain attached as Exhibit A split into 2 separate chains after Steven Caloiaro's April 4, 2024 email.  Both branches are include in Exhibit A as Exhibits A.1 and A.2, respectively.  Citations are to the "Exhibit A – Page __" footer.

(*Id.* at p. 4) Bestway's counsel further informed IRC, "[t]here should be no dispute that Mr. Lin was a key witness as the lead inventor and designer. The alleged loss of his ESI will irreparable[sic] harm Bestway's efforts to defend itself against Intex's claims." (*Id.*) Indeed, Bestway will be deprived of at least the following relevant information that would most likely be reflected in Tony Lin's ESI based on sworn deposition testimony from Mr. Hsu, the second inventor of the Asserted Patents, in the 3950 Litigation:

- _____. (Caloiaro Decl., **Exhibit B**, Hsu Dep. Transcript, 9/22/22 – p. 47:2-14);

- _____. (Ex. B, Hsu Dep. Transcript, 9/22/22 – p. 42:21-25 – p. 43:1-15);

- _____ _____ _____. (Ex. B, Hsu Dep. Transcript, 9/22/22 – p. 65:17-22); and

- _____ _____. (*Id.*, at p. 78:2-5).

In response to Bestway's email, IRC's counsel again reiterated that Mr. Lin passed away in 2016, and seemingly questioned Bestway's assertion that IRC was obligated to preserve Mr. Lin's ESI since 2014. (Ex. A at p. 9).

However, there is no dispute that Faegre Baker Daniels LLP ("Faegre")[8] sent its first demand letter on July 30, 2014, informing Bestway that Intex was pursuing intellectual property protection for Intex's Dura-Beam Technology in Intex's airbeds and inflatable spas. ("July 2014 Letter", Caloiaro Decl., **Exhibit C**). The July 2014 Letter listed several patents and patent applications filed by Intex, one of which later matured into the '240 Patent ("'240 Patent Application"). (Ex. C)  At the time the

---

[8] It is important to note that Faegre represents both IRC and Intex Xiamen. (Ex. D).

Letter was sent, the inventors, including Mr. Lin, owned the '240 Patent Application. ('240 Patent Assignment History, Caloiaro Decl., **Exhibit D**).  As employees of Intex Xiamen, the inventors therefore were obligated to—and did—assign the '240 Patent Application to Intex Xiamen. (Ex. D). The July 2014 Letter goes on to "warn" Bestway and its customers to "not develop an inventory of […] airbeds and spas that will be subject to damages and injunctive relief before the next sales season." (Ex. C.)

Faegre sent a second demand letter on October 2, 2014, accusing Bestway's Coleman Lay-Z-Spa product of facing "significant risk" when compared to the "pending Intex U.S. patent applications we have provided to you" in the July 2014 Letter. (ECF No. 189-1, p. 2). The Oct 2014 Letter further states, "[i]mmediately after issuance of any such patent, Intex will pursue all available remedies, including, but not limited to, damages and enjoining importation and sales of this Bestway spa." (*Id.*)

Faegre's final demand letter was sent on November 19, 2015, once again referencing Intex's "spa and airbed patent portfolio that have issued or will soon issue," and threatening to "pursue all available remedies…" against Bestway. (*Id.* at p. 3). Mr. Lin was still alive when each of the Faegre demand letters were sent, his ESI still existed,[9] and Intex Xiamen's employees—including Mr. Lin—owned the intellectual property when the July 2014 and Oct 2014 Letters were sent. (Ex. D).

On April 15, 2024, the parties met and conferred regarding the "who, what, when, where, and why regarding Intex Xiamen's failure to maintain Mr. Lin's ESI…" (Ex. A, at p. 8). However, IRC's counsel utterly refused to answer any of Bestway's questions on this issue, stating they "were not prepared to do so today." (*Id.*) In other words, after informing Bestway two weeks prior that Intex Xiamen no longer had Mr. Lin's ESI, counsel for IRC was refusing to provide further details

---

[9] *See* Exhibit E referenced further herein.

16

1  regarding this failure to maintain ESI. As Bestway's counsel communicated to IRC's
2  counsel, "[t]here was no reason Intex could not have been prepared to discuss the
3  factual issue […] other than intentionally delaying." (*Id.*). Indeed, that has been
4  IRC's *modus operandi* the entire time: IRC waited months to admit it no longer had
5  Mr. Lin's ESI in hopes its Motion for Review would be successful, and then refused
6  to explain why, how, or when it lost Mr. Lin's ESI after it could no longer keep this
7  hidden.

8      On April 25, 2024, IRC finally answered Bestway's questions,
9
10
11  (Caloiaro Decl., **Exhibit E**). Moreover, IRC failed to identify any
12  efforts made to preserve Mr. Lin's ESI after 2014, stating instead that
13
14  (*Id.*). In response, counsel for Bestway asked IRC to clarify whether
15
16  (*Id.*). Additionally, Bestway asked
17  whether
18  (*Id.*). To date, IRC has not provided a response to these
19  questions. (Caloiaro Decl., ¶¶14-15).

20      As such, IRC has not only breached its duty to preserve, but also violated
21  multiple court orders by failing to produce ESI that the Court ordered because of its
22  spoliation.

23  **IV.   IRC'S STATEMENT OF FACTS**

24      **A.   <u>BACKGROUND</u>**

25      Bestway's alleged "Statement of Facts" is anything but. (*See supra*, §III.)
26  While IRC has endeavored to correct each and every one of Bestway's unsupported
27  assertions, misrepresentations, inflammatory rhetoric, and plainly false statements,
28

one key misrepresentation bares mentioning from the start. Specifically, Bestway's entire motion attempts to conflate the fact that the parties are involved in not one, but ***two different cases*** in front of this Court. First, in a separate and distinct case, IRC alleges that certain of Bestway's inflatable spas (the "Accused Spas") infringe IRC's U.S. Patent No. 9,254,240 (the '240 Patent). *See Intex Recreation Corp. v. Bestway (USA), Inc., et al*, Consol. Case No. 2:16-cv-03950 JAK (Ex) (the "Spa Case"). Second, over three years after the Spa Case was filed, IRC filed the above-captioned case, asserting that Bestway's TriTech™ airbeds (the "Accused Beds") infringe the U.S. Patent No. 10,165,869 ("the '869 Patent") and U.S. Patent No. 9,901,186 ("the '186 Patent"). *See Intex Recreation Corp.*, *v. Bestway (USA) Inc. et al*., Case No. 2:19-cv-08596-JAK-E (the "Bed Case" or "this Matter"). Bestway did not even begin selling the Accused Beds giving rise to this Matter until late September, 2017—***three years after*** Bestway contends IRC had a duty to preserve evidence in this case. Then, five years later, on September 30, 2022, IRC amended the complaint to assert the '240 Patent against the Accused Beds, which Bestway did not oppose. (*See* ECF No. 85 (Second Amended Complaint); *see also* ECF No. 84 (Joint Stip. Regarding Second Amended Complaint).)

### 1.   The Parties' Conduct in the Spa Case

#### (a)   *IRC's Correspondence Prior to the Spa Case*

Prior to the Spa Case, on July 30, 2014, IRC sent a letter to Bestway explaining that it had "introduced its Dura-Beam™ Technology" and was "pursuing intellectual property protection" regarding the same. (*See* Caloiaro Decl., Ex. C at 1.) In its letter, IRC specifically identified two sets of infringing products: (1) Bestway's "Comfort Cell™" products,[10] including airbeds; and (2) the Accused Spas. (*Id.*)

---

[10]   As discussed further below, Bestway's Comfort Cell™ products are separate and distinct from its Comfort *Quest* products—the latter of which is asserted as prior

Because Bestway refused to stop selling its infringing Comfort Cell™ airbeds, IRC was forced to file a separate case in front of the International Trade Commission. *See In re Certain Inflatable Prods. With Tensioning Structures and Processes for Making the same,* Inv. No. 337-TA-1009 (Jul. 25, 2016) (the "ITC Action"). In the ITC Action, IRC asserted U.S. Patent Nos. 8,562,773 and 9,156,203 against the Comfort Cell™ airbeds. Eventually, Bestway acknowledged its infringing conduct and entered into a consent order, ceasing importation and sales of its Comfort Cell™ airbeds. (*See* (ECF No. 85-3 (ITC Consent Order).)

With respect to the Accused Spas, IRC made multiple attempts to resolve the dispute with Bestway. First, in its July 30, 2014 letter, IRC warned Bestway that the "spa shown in [its] catalog" will "infringe" IRC's then-pending "patents," including the application that issued as the '240 Patent. (*See* Caloiaro Decl., Ex. C at 1.) On October 2, 2014, IRC sent another letter to counsel for Bestway (ECF No. 189-1, at 2) again warning Bestway of the "significant risk" it faced if it did not cease sales of the Accused Spas, and that IRC would, once its pending patents were allowed, "pursue all available remedies, including, but not limited to, damages and enjoining importation and sales" of the Accused Spas. (DeAmicis Decl. ¶ 4, Ex. 1) Despite IRC's attempts, Bestway did not stop selling the Accused Spas so, on November 19, 2015, IRC sent an additional letter informing Bestway that the U.S. Patent Office had allowed certain patent applications identified in prior correspondence and that the Accused Spas infringed at least one of those patents. (DeAmicis Decl. ¶ 5, Ex. 2.) Afterward, IRC was forced to file the Spa Case.

Notably, in none of these letters to Bestway did IRC identify or otherwise have knowledge of the Accused Beds at issue in this Matter. Nor could IRC, as

art in this case. This is a distinction Bestway seemingly ignores or mischaracterizes throughout its portion of this joint stipulation.

1   **Bestway did not even introduce these products until September 2017, around**
2   **three years later.** (DeAmicis Decl. ¶ 6, Ex. 3.)

3                    (b)      *The Parties' ESI Discovery in the Spa Case*

4          On February 17, 2021, in the Spa Case, the Court entered an "Order
5   Governing Electronic Discovery" (the "Spa Case ESI Order"). (*See* DeAmicis Decl.
6   ¶ 7, Ex. 4.) The Spa Case ESI Order required the parties to provide "a specific listing
7   of likely e-mail custodians." (DeAmicis Decl. ¶ 7, Ex. 4 at 20.) On March 23, 2021,
8   IRC served its ESI Custodian Identification, as required by the Court's ESI Order.
9   (DeAmicis Decl. ¶ 8, Ex. 5.) Because IRC reasonably believed that it did not have
10  custody, possession, or control of ESI outside of IRC's own ESI (*e.g.*, ESI belonging
11  to Intex Industries Xiamen Co Ltd. ("Intex Xiamen")[11]), IRC identified four
12  custodians from IRC and did not identify any custodians from Intex Xiamen. (*See*
13  *id.*)

14         The next day, Bestway proffered its "Email Discovery Requests to [IRC]" in
15  the Spa Case, which identified eight custodians – one of which was Mr. Hua Hsiang
16  ("Tony") Lin. (DeAmicis Decl. ¶ 9, Ex. 6 at 32.) On April 6, 2021, IRC timely served
17  its "Objections to Bestway Email Production Requests." (DeAmicis Decl. ¶ 9, Ex.
18  6.) In its objections, IRC specifically notified Bestway that Mr. Lin had "passed
19  away several years ago, and, thus, [wa]s not a proper custodian." (*See e.g.*, DeAmicis
20  Decl. ¶ 9, Ex. 6 at 32.) IRC also explained that individuals—like Mr. Lin—who were
21  "not employed by [IRC]" were also not "proper custodians." (*See e.g.*, DeAmicis
22  Decl. ¶ 9, Ex. 6 at 32.) Thus, as early as April 2021, IRC explicitly notified Bestway
23  that IRC did not have "possession, custody, or control" of the ESI of individuals

24

25

----

26  [11]
27                                                           . (*See e.g.*, DeAmicis Decl. ¶ 11, Ex. 7,
       ¶ 3.)
28

1  outside of IRC, including those working at Intex Xiamen like Mr. Lin.  (*See e.g.*,

2  DeAmicis Decl. ¶ 9, Ex. 6 at 31-32.)

3      At **no point** in the Spa Case did Bestway argue that IRC did, in fact, have

4  control of Intex Xiamen employees' ESI. Nor did Bestway ever argue that IRC had

5  **any** duty to preserve Intex Xiamen ESI (much less one originating back to 2014).

6  Indeed, Bestway **did not** pursue any motion practice related to Mr. Lin's (or any

7  other Intex Xiamen employees') (DeAmicis Decl. ¶ 10.) ESI. Further, even though

8  the '240 Patent involved in the Spa Case is also at issue in this Matter, Bestway **did**

9  **not complain (and has not complained)**, as it apparently does now in this Matter,

10 that it would be unable to "test the veracity of the allegations and claims made" or

11 otherwise put on its case because it did not have access to Intex Xiamen ESI. (*See*

12 *infra*, at 40:2-6)

13     Instead, after IRC made its ESI objections, Bestway **did not pursue any ESI**

14 **from employees of Intex Xiamen**–including Mr. Lin's ESI. (DeAmicis Decl. ¶ 10.)

15 Thus, until Bestway raised the issue of Intex Xiamen's ESI in this Matter in 2023,

16 Bestway's conduct suggested that it (1) agreed that IRC did not control Xiamen ESI;

17 and/or (2) did not consider Mr. Lin's ESI to be significant or necessary to Bestway's

18 claims or defenses in the case.

19         **2.**    **The Parties' Conduct in the Bed Case**

20     Bestway introduced the Accused Beds in September 2017,

21     —years after IRC sent its 2014

22 correspondence leading up to the Spa Case. (DeAmicis Decl. ¶ 6, Ex. 3.) By late

23 2018, . (*See*

24 *e.g.*, DeAmicis Decl. ¶ 5, Ex. 8.) However, it was not until

25

26 .[12] (*See e.g.*, Whalen Decl. ¶ 8.) This investigation resulted in IRC's

27

28

counsel sending a letter to Bestway on July 11, 2019, wherein IRC explained that it intended to file "one or more lawsuits" related to the Accused Beds if Bestway did not cease sales of the same. (DeAmicis Decl. ¶ 13, Ex. 9.) Bestway did not stop its infringing conduct with respect to these Accused Beds, so IRC was forced to file this Matter.

(a) ***The Parties' ESI Discovery Requests and Responses in the Bed Case and Bestway's Misrepresentations Regarding the Same***

On March 21, 2023, the Court entered its "Order Regarding Electronic Discovery" (the Bed Case ESI Order) in this Matter. (DeAmicis Decl. ¶ 14, Ex. 10.) Similar to the Spa Case, the Bed Case ESI Order in this Matter states that the parties were to "exchange a listing of all likely e-mail custodians and a specific identification of the seven most significant listed email custodians[.]" (DeAmicis Decl. ¶ 14, Ex. 10 at 85.) However, the Bed Case ESI Order also notes that "[i]f a party . . . in good faith cannot identify at least seven likely e-mail custodians, it shall provide in good faith a specific listing of likely e-mail custodians." (DeAmicis Decl. ¶ 14, Ex. 10 at 85, fn. 2.)

While Bestway now argues that "Intex refused to comply with this provision" (*see supra*, 10:2-4), that is simply not true. Specifically, on March 29, 2023, IRC served its Identification of Email Custodians in accordance with the ESI Order. (DeAmicis Decl. ¶ 15, Ex. 11.) Because IRC, "in good faith," reasonably believed that it could not identify seven custodians, it provided a list of four custodians from IRC, which are the exact same four custodians IRC identified in the Spa Case and which Bestway never complained about in that case. (DeAmicis Decl. ¶ 8, Ex. 5.) More specifically, because IRC reasonably believed that it did not have custody,

---

[12] Counsel for IRC possesses privileged documentation demonstrating                           .
To the extent the Court would like this documentation to review *in camera*, IRC will provide the same.

possession, or control of ESI outside of its own ESI, IRC did not identify any custodians from Intex Xiamen. (*See id*.) Indeed, since Bestway did not dispute IRC's position regarding not having possession, custody, or control of Intex Xiamen ESI in the Spa Case, IRC relied, at least in part, on Bestway's previous conduct to form this reasonable belief. [13]

However, on April 4, 2023, Bestway served its ESI Production Requests. (DeAmicis Decl. ¶ 17, Ex. 13.) To IRC's surprise, Bestway again identified Intex Xiamen employees as custodians, including Mr. Lin. (DeAmicis Decl. ¶ 17, Ex. 13, at 107-108.) In response, IRC reminded Bestway that IRC had "identified four [IRC] custodians in the [Spa] case" without identifying Intex Xiamen employees as custodians and that "Bestway raised no objection." (DeAmicis Decl. ¶ 18, Ex. 14 at 117.) In fact, IRC explained that, given Bestway's conduct in the Spa Case, it was unclear "why Bestway [wa]s raising this as an issue now." (DeAmicis Decl. ¶ 18, Ex. 14 at 117.) Moreover, IRC also reminded Bestway—with caselaw support—of its reasonable belief that IRC did not have possession, custody, or control of any Intex Xiamen ESI, including that of Mr. Lin. (DeAmicis Decl. ¶ 18, Ex. 14 at 111-112.) Accordingly, as it had done in the Spa Case, IRC maintained its identification of the four IRC custodians it had identified in its ESI Custodian Identification.

       (b)   ***The Parties' Motion to Compel Briefing and Bestway's Misrepresentations Regarding the Same.***

In stark contrast to its conduct in the Spa Case, in this case, Bestway pursued ESI from Intex Xiamen employees (the "Intex Xiamen ESI"). Specifically, on

---

[13]  Bestway also argues that IRC "never did" comply with the Bed Case ESI Order. (*See supra* 10:5-8.) That is incorrect. Specifically, on April 1, 2024, after this Court's Order denying its Motion for Review (ECF No. 202), IRC identified additional custodians "in a good faith effort to comply with the" Court's Order. (DeAmicis Decl. ¶ 16, Ex. 12.) Accordingly, there is no reasonable dispute that, at present, IRC has fully complied or is in the process of complying with the Court's Orders, including the Bed Case ESI Order.

October 10, 2023, Bestway filed a Motion to Compel, requesting that the Magistrate compel IRC to identify e-mail custodians and produce ESI from non-party Intex Xiamen. (*See* DeAmicis Decl. ¶ 19, Ex. 15 at 161:18-24.) IRC opposed Bestway's Motion to Compel based on its long held, good faith belief that it doesn't have possession, custody, or control of this ESI. (*See e.g.*, DeAmicis Decl. ¶ 19, Ex. 15 at § III.C.) Moreover,                                                                      .

(*See* DeAmicis Decl. ¶ 19, Ex. 15 at 158.)

As part of the Motion to Compel briefing, IRC submitted the declaration of Mr. Chris Hsu, the Assistant General Manager at Intex Xiamen, in support of its portion of the joint stipulation opposing the Motion to Compel. (*See* DeAmicis Decl. ¶ 11, Ex. 7.) In this declaration,

                                                        (*See* DeAmicis Decl. ¶ 11, Ex. 7 at ¶8.)

Bestway asserts that Mr. Hsu's declaration allegedly shows that both "IRC and Intex Xiamen led Bestway—and the Court—to believe or assume that ESI from the Intex Xiamen Custodians, including Mr. Lin, still existed, but that Intex Xiamen merely refused to provide it." (*See supra*, 11:4-7.) That is false. Nothing in Mr. Hsu's declaration does any such thing; all Mr. Hsu did was                                         (*See* DeAmicis Decl. ¶ 11, Ex. 7, ¶ 8.)

On October 30, 2023, the Magistrate granted Bestway's Motion to Compel, finding that IRC had legal control, based on a single boilerplate provision in an assignment agreement, over "Intex Xiamen's custodians and Intex Xiamen's ESI." (ECF No. 154, at 7.)

(c)   ***The Parties' Additional Briefing and Bestway's Misrepresentations Regarding the Same.***

1    On November 6, 2023, IRC filed an *Ex Parte* Application for Stay
2    ("Application for Stay") seeking to stay enforcement of the Discovery Order. (ECF
3    No. 155). In its Application for Stay, IRC once again argued that it did not "possess
4    nor ha[ve] the legal right to obtain" the Intex Xiamen ESI and, given Intex Xiamen's
5    refusal to provide the same, the Magistrate's Order was futile. (ECF No. 155 at 2.)
6    However, the Court denied the Application for Stay and ordered the "beginning [of]
7    the identification and collection process" with respect to ESI in the Matter. (ECF
8    No. 157.)

9        On November 10, 2023, IRC filed a Motion for Review of the Discovery
10   Order ("Motion for Review"). (*See* DeAmicis Decl. ¶ 20, Ex. 16.) IRC again
11   explained its long-held and reasonable belief that it does not have possession,
12   custody, or control of Intex Xiamen ESI. (*See* DeAmicis Decl. ¶ 20, Ex. 16.)
13   Relatedly, IRC explained that, while the Magistrate's Order was based on a single
14   provision of a patent assignment contract, both parties to that contract agreed that
15   the provision did not give IRC control over the Intex Xiamen ESI. (*See generally*
16   DeAmicis Decl. ¶ 20, Ex. 16.) IRC also provided caselaw in support of its argument.
17   (*See id.* at 8-9); *see also Halicki Films, LLC v. Sanderson Sales and Marketing*, 547
18   F.3d 1213, 1223 (9th Cir. 2008) ("[I]t is reversible error for a trial court to refuse to
19   consider such extrinsic evidence on the basis of the trial court's own conclusion that
20   the language of the contract appears to be clear and unambiguous on its face."
21   (citation omitted)); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, CV 06-3459
22   ABC(PLAx), 2011 WL 3714772, at *7 (C.D. Cal. Aug. 22, 2011).

23       Further, and as Bestway admits, IRC submitted the declaration of Mr. Whalen
24   dated November 9, 2023, wherein Mr. Whalen attested that after the Magistrate
25   granted Bestway's Motion to Compel, he "requested that Intex Xiamen produce ESI
26   from [] Hua Hsiang [Tony] Lin" and that Intex Xiamen refused.  (DeAmicis Decl. ¶
27   21, Ex. 17 at ¶¶ 6-7.) Notably, Mr. Whalen's request confirms that, even as of

28

November 9, 2023, IRC employees **did not know that Mr. Lin's ESI had been lost**. (DeAmicis Decl. ¶ 21, Ex. 17 at ¶ 6.; *see also* Whalen Decl., ¶ 3.) Thus, Bestway's "statement of fact" that, at this time, IRC failed to inform Bestway or the Court that it "could not produce Tony Lin's ESI because it was destroyed," is, again, patently false. (*See supra*, 12:4-6.)

While IRC's Motion for Review was pending, and despite Bestway's (unsupported) allegations otherwise (*supra*, 11:19-21), IRC did not "refuse[] to produce the ordered ESI from Intex Xiamen" after its Application for Stay was denied. Instead, on November 11, 2023, the parties met and conferred, wherein IRC again explained that "non-party Intex Xiamen does not agree to run any e-mail searches." (DeAmicis Decl. ¶ 22, Ex. 18 at 182.) During the meet and confer, counsel for Bestway asked IRC's counsel to "confirm the employment status" of certain Intex Xiamen current and former employees, including Mr. Lin. (DeAmicis Decl. ¶ 22, Ex. 18 at 182.) In response, on November 17, "in a good faith effort to comply with the Court's ruling in ECF No. 157" IRC provided the information it was able to obtain from Intex Xiamen (that Bestway itself asked for) related to the Intex Xiamen ESI. (DeAmicis Decl. ¶ 22, Ex. 18 at 183.)

Further, and again, contrary to Bestway's assertions otherwise (*supra*, 12:12-15), when Bestway asked whether "Intex has preserved the emails of Hua Hsiang [Tony] Lin" counsel for IRC did respond regarding this issue, and explained that, given IRC's (and Intex Xiamen's) position that IRC did not have possession, custody, or control of Intex Xiamen ESI "non-party Intex Xiamen d[id] not agree to run any e-mail searches." (DeAmicis Decl. ¶ 22, Ex. 18 at 182.) Consequently, IRC **did not know** whether Intex Xiamen preserved Mr. Lin's ESI. (Whalen Decl. ¶¶ 3-4; Hsu Decl. ¶ 8.)

Relatedly, Bestway's unfounded, unsupported assertion that IRC refused to "com[e] clean" about the "deleted Tony Lin's emails" is blatantly false. (*See supra*,

12:20-22.) Again, given Intex Xiamen's refusal to run any e-mail searches, IRC did not know whether Intex Xiamen preserved Mr. Lin's ESI. (Whalen Decl. ¶¶ 3-4; Hsu Decl. ¶ 8.) Regardless, IRC also explained that Bestway failed to provide any "authority that any preservation obligations attach" to IRC as it related Mr. Lin's ESI and reiterated its reasonably held belief that "IRC has no control over Intex Xiamen's information and, thus, has no authority to require Intex Xiamen to preserve information." (DeAmicis Decl. ¶ 23, Ex. 19, p. 187, fn. 2.)

On March 11, 2024, the Court denied IRC's Motion for Review. (ECF No. 202.)

(d)  ***IRC's Discovery, in 2024, related to Mr. Lin's ESI and Bestway's Misrepresentations Regarding the Same.***

In response to the Court's order denying IRC's Motion for Review, IRC once again reached out to Intex Xiamen regarding the ESI Bestway requested. (ECF 212-1, at 2.) While Intex Xiamen still protested that IRC has possession, custody, or control over its ESI, in a good faith effort to abide by the Court's order, Intex Xiamen agreed to provide ESI information for the case, "to the extent such information is in Intex Xiamen's custody, possession, or control and subject to any further objections that may arise upon review of the ESI." (*See id.*)

Soon after Intex Xiamen agreed to provide ESI,

. (Whalen Decl. ¶¶ 3-4; Hsu Decl. ¶ 8.) Specifically,

. (Huang Decl. ¶ 4.)

. (*See* Hsu Decl. ¶ 3, Ex. A at §§ 2.5.3; 5.1.8; Hsu Decl. ¶ 6, Ex. B; Huang Decl., ¶ 5.)

(*See* Hsu Decl. ¶ 7; Huang Decl., ¶ 5.))

1  Once IRC found out about Mr. Lin's lost ESI on ⬜⬜⬜⬜⬜, and given the
2  Court's order regarding control over Intex Xiamen ESI, based on a single boilerplate
3  provision in an assignment agreement, IRC promptly explained to Bestway on April
4  1, 2024 that it had recently discovered that Intex Xiamen no longer possessed Mr.
5  Lin's ESI. (DeAmicis Decl. ¶ 16, Ex. 12.)

6      On April 4, 2024, Bestway asked for a meet and confer regarding Mr. Lin's
7  lost ESI. (Caloiaro Decl., Ex. A.2 at 11.) However, in violation of Local Rule 37-1,
8  Bestway's email failed to state (1) the relief it intended to request from the Court;
9  and (2) the authority that allegedly supported its position. (*See id*.) On April 11,
10 2024, counsel for IRC informed Bestway of these deficiencies as well as its belief
11 that any meet and confer would be futile without this required information. (*See id.*
12 at 10.) Even in view of these deficiencies, Bestway responded again asking for a
13 meet and confer and still failing to provide the "basis of [its] position" related to Mr.
14 Lin's ESI so that the parties could meaningfully discuss the issue. (*Id.* at 9-10.)

15     On April 15, 2024, the parties telephonically discussed Mr. Lin's ESI, and
16 again, counsel for IRC asked for the legal basis in support of any potential motion
17 from Bestway. (DeAmicis Decl. ¶ 25.) For the first time, Bestway mentioned its
18 alleged legal authority for its forthcoming motion, and agreed to send the same to
19 counsel for IRC to review. (Caloiaro Decl., Ex. A.2 at 8-9.) Because Bestway failed
20 to provide this authority prior to the meeting, counsel for IRC explained that it was
21 not prepared to discuss the same on the call. (*See* Caloiaro Decl., Ex. A at 8.)  That
22 is, despite Bestway's unsupported allegations to the contrary (*supra*, 16:23-25) any
23 "refus[al]" by IRC to discuss Bestway's forthcoming motion related to Mr. Lin's
24 ESI during the April 15, 2024 meeting was caused by Bestway's own failure to abide
25 by Local Rule 37-1. Further, Bestway's "Statement of Fact" that IRC "waited
26 months to admit it no longer had Mr. Lin's ESI in hopes its Motion for Review would
27 be successful, and then refused to explain why, how, or when it lost Mr. Lin's ESI
28

1   after it could no longer keep this hidden" is completely unsupported and false. (*See*

2   *supra*, 17:5-7.) As explained, once IRC knew that Mr. Lin's ESI was lost, it promptly

3   told Bestway of the same. (Caloiaro Decl., Ex. A.1 at 5.) And, as Bestway itself

4   concedes, IRC did provide the information Bestway asked for on April 25, 2024,

5   soon after Bestway, as required by the Local Rules, finally provided the basis for its

6   upcoming motion. (*See* Caloiaro Decl., Ex. E.)

7   **V.    BESTWAY'S ARGUMENT**

8       **A.    <u>IRC Failed to Preserve and Destroyed Mr. Lin's ESI.</u>**

9           **1.    *IRC's Duty to Preserve Mr. Lin's ESI Arose As Early As 2014***
10                 ***When IRC Knew Litigation Against Bestway Was Reasonably***
                   ***Foreseeable.***

11          The duty to preserve relevant information, including ESI, "arises when a party

12   knows or should know that certain evidence is relevant to pending or future

13   litigation." *Microvention*, 2023 WL 7476998, at *3. As such, the duty arises not only

14   during litigation, but also whenever litigation is reasonably foreseeable. *Id.*; *see also*

15   Rule 37(e) Advisory Committee Note.

16          "Unlike defendants, plaintiffs may be imputed notice of the duty to preserve

17   potentially relevant evidence ***prior to the filing of the complaint***." *Cyntegra, Inc. v.*

18   *Idexx Lab'ys, Inc.*, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007), *aff'd,* 322 F.

19   App'x 569 (9th Cir. 2009)(emphasis added). This is because "[p]laintiffs are 'in

20   control of when the litigation is to be commenced' and ***must necessarily*** anticipate

21   litigation before the complaint is filed." *Id.* (emphasis added).

22          Here, IRC and Intex Xiamen anticipated litigation with Bestway as early as

23   2014. For example, Faegre sent its first demand letter on July 30, 2014, warning

24   Bestway of potential litigation arising from Bestway "airbeds and spas that will be

25   subject to damages and injunctive relief […]" (Ex. C). Faegre sent a second demand

26   letter on October 2, 2014, specifically accusing Bestway's Coleman Lay-Z-Spa

27   product of infringing Intex's pending patent applications, and threatening litigation

28

29

"[i]mmediately after issuance of any such patent…" (ECF No. 189-1, p. 2). Faegre's final demand letter was sent on November 19, 2015, once again threatening to "pursue all available remedies…" against Bestway. (ECF No. 189-1, p. 3). These letters clearly demonstrate that IRC and Intex Xiamen actually anticipated litigation against Bestway as early as July 2014. *See e.g.*, *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, 2016 WL 4485568, at *10 (S.D. Cal. Aug. 19, 2016)(holding plaintiffs' duty to preserve arose at the earliest in February 2012 when plaintiffs "explicitly threatened litigation against Defendants."); *Microvention*, 2023 WL 7476998, at *3 (finding that evidence a party actually anticipated litigation may include emails, correspondence, or retaining a lawyer for potential litigation).

IRC knew Tony Lin's ESI was relevant as early as 2014 when the duty to preserve arose as well. Indeed, Tony Lin is one of the named inventors for the Asserted Patents, the applications to which were specifically referenced in the July 2014, Oct 2014, and Nov 15 Letters. (Caloiaro Decl., Ex. C; *see also* ECF No. 189-1, pp. 2-3). Moreover, the Nov 2015 Letter attached a copy of the published patent application that matured into the '240 Patent, listing Tony Lin as one of the inventors. (ECF No. 189-1, p. 4) There can be no dispute that evidence from the inventor of the Asserted Patents, a key player, is relevant to this patent infringement action, and Mr. Lin was alive when each demand letter was sent. *See Montoya v. Orange Cnty. Sheriff's Dep't*, 2013 WL 6705992, at *7 (C.D. Cal. Dec. 18, 2013)(explaining the duty to preserve pertains to "those employees likely to have relevant information—the 'key players' in the case.")(*quoting Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012)). As such, IRC had a duty to preserve Mr. Lin's ESI and failed to do so.

### 2. *IRC Had a Duty to Instruct Intex Xiamen to Preserve Tony Lin's ESI.*

IRC suggests that it had no duty to preserve Mr. Lin's ESI because he died three years before this case was initiated, and because IRC has no authority to require Intex Xiamen to preserve information as it has no control over Intex Xiamen's information. (ECF No. 179, p. 10, fn. 2). Both of these suggestions are false.

First, as explained previously, IRC's duty to preserve Mr. Lin's ESI arose as early as 2014 when this litigation was threatened. *See Starline*, 2016 WL 4485568, at *10 (holding plaintiffs' duty to preserve arose when plaintiffs "explicitly threatened litigation against Defendants.") Second, this Court affirmed the Discovery Order ruling that IRC had legal control over Intex Xiamen ESI, including Mr. Lin's emails. (ECF No. 202). As such, IRC's argument that it has no control over Intex Xiamen's information is wrong. (*Id.*) Third, Intex Xiamen had its own independent duty to preserve Mr. Lin's emails in 2014 because its own employees owned the relevant patent applications cited in the 2014 Demand Letters. (Ex. D); *see e.g., Starline*, 2016 WL 4485568, at *10 (holding plaintiffs' duty to preserve arose at the earliest in February 2012 when plaintiffs "explicitly threatened litigation against Defendants.").

Moreover, courts have found that parties who have legal control over a third party's information (like IRC) have a duty to direct the third party to preserve relevant evidence when litigation is likely. For example, in *Felman Prod., Inc. v. Indus. Risk Insurers*, 2011 WL 4547012 (S.D.W. Va. Sept. 29, 2011) the plaintiff retained an expert prior to filing the action because plaintiff anticipated litigation would be necessary. *Id.* As such, the court held that plaintiff's duty to preserve evidence arose no later than the date plaintiff retained its expert. *Id.* Nonetheless, the court held that in addition to plaintiff's duty to preserve its own relevant information, plaintiff was also obligated to preserve the information belonging to a third party, Privat, located in Ukraine. *Id.* Discovery revealed that Privat dictated major

31

1   operational decisions for plaintiff during the relevant time period prior to filing the

2   case. *Id.* at *4. As such, the court found that plaintiff had legal control over Privat's

3   information and, therefore, plaintiff "had a duty to preserve the files of the Privat

4   representatives." *Id.* at *11.

5       Like the plaintiff in *Feldman*, IRC has legal control over the information of

6   third party Intex Xiamen. (ECF No. 202). Accordingly, IRC "had a duty to preserve

7   the files of [Intex Xiamen's] representatives," including Mr. Lin's ESI. *Id.*; *see also*

8   *Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado*, 2013 WL

9   3776971, at *3 (N.D. Ill. July 18, 2013)(finding plaintiff responsible for preserving

10  evidence of third party because it has a legal right to obtain the information pursuant

11  to a contractual agreement). Indeed, courts have extended the duty to preserve

12  evidence where a party has less control than IRC does in this case, "so long as the

13  party has access to, or indirect control over, such evidence." *Cyntegra, Inc. v. Idexx*

14  *Lab'ys, Inc.*, 2007 WL 5193736, at *5 (C.D. Cal. Sept. 21, 2007), *aff'd*, 322 F. App'x

15  569 (9th Cir. 2009); *see also World Courier v. Barone*, 2007 WL 1119196, at *1

16  (N.D. Cal. Apr. 16, 2007)(rejecting argument that defendant could not be sanctioned

17  because spoliator was not a party to the action). Because IRC failed to preserve at

18  least Mr. Lin's ESI, or otherwise direct Intex Xiamen to preserve this information,

19  IRC has violated its duty to preserve and should be sanctioned for spoliation of

20  evidence. *Microvention*, 2023 WL 7476998, at *2.

21       **B.   The Court Should Sanction IRC For its Intentional Spoliation.**

22       There are two levels of sanctions under Rule 37(e). First, the court may order

23  "measures no greater than necessary to cure […] prejudice" upon a finding of

24  prejudice from the loss of ESI. Fed. R. Civ. P. 37(e)(1). Second, the court may issue

25  harsher sanctions (e.g., dismissing the spoliating party's claims or defenses; (2)

26  excluding testimony or evidence; and (3) instructing the jury to infer that evidence

27  destroyed or suppressed was adverse to the party who destroyed it) upon a finding

28

1  that the spoliator "acted with intent to deprive another party of the information's use

2  in the litigation." Fed. R. Civ. P. 37(e)(2).

3      "While 'there need not be a 'smoking gun' to prove intent ... there must be

4  evidence of 'a serious and specific sort of culpability' regarding the loss of the

5  relevant ESI.'" *Microvention*, 2023 WL 7476998, at *5 (internal citation omitted).

6  As such, the loss of ESI must not be merely or grossly negligent, "but an intentional

7  effort to keep the ESI from the opposing party." *Id.* (*quoting Oracle Am., Inc. v.*

8  *Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018).

9          **1.    *IRC Intentionally Concealed it Deleted Mr. Lin's ESI.***

10      "[A] party's conduct satisfies Rule 37(e)(2)'s intent requirement when the

11  evidence shows or it is reasonable to infer, that the ... party purposefully destroyed

12  evidence to avoid its litigation obligations." *Microvention*, 2023 WL 7476998, at *5

13  (internal citation omitted). Intent may also be inferred if the spoliator had notice that

14  documents were potentially relevant and nevertheless, "fails to take measures to

15  preserve relevant evidence...'" *Id.* at *7 (*quoting Leon v. IDX Sys. Corp.*, 464 F.3d

16  951, 959 (9th Cir. 2006)). Circumstantial evidence, such as the timing of the

17  document loss, can also demonstrate intent. *Id.*

18      Here, the timing of Intex's spoliation, suggests IRC intended to hide

19  unfavorable evidence from Bestway related to the invalidating Comfort Quest

20  product. Specifically,

21

22                                         . (Ex. E). However, Bestway first informed IRC that its

23  Comfort Quest airbed was invalidating prior art to the Asserted '240 Patent in

24  February 2018 (3950 ECF[14] No. 298-1, p. 33). Thus,

25

26  ─────────────────────

    [14] 3950 ECF shall refer to the ECF docket entries in the parallel 3950 Litigation,

27  *Intex Recreation Corp., et al., v. Bestway (USA), Inc., et al.*, Case No. LA CV16-

    03950-JAK (Ex).

28

                                        33

. (Ex. E). While Bestway cannot know for certain the content of the emails deleted, circumstantial evidence suggests Mr. Lin's emails included information unfavorable to Intex related to Intex's practice of collecting competitor products and drafting defensive patent claims to cover them, thus calling into question actual inventorship.

For example,

(Caloairo Decl., **Exhibit F** - Mr. Zee Dep. Transcript, 8596intex-0360675; 8596intex-0360673)).  In  particular,

(Ex. F, 8596intex-0360686; 8596intex-0360672). Additionally,

and had possession of Bestway's 2010 airbed catalog displaying the Comfort Quest product since 2009. (Caloiaro Decl., **Exhibit G**)[17].

Consistent with Mr. Zee's testimony,

(Caloiaro Decl., **Exhibit H**, 3950INTEX-00224624). Additionally,

---

[15] Mr. Zee is in charge of all aspects of the Intex family of corporations. (*See* ECF No. 164, Page ID#6977-6978).

[16] Ex. B, Chris Hsu Dep. Transcript, 9/24/22, p. 275:5-8.

[17] IRC previously represented that it first became aware of the Comfort Quest product in 2018.

.

(Caloiaro Decl., **Exhibit I**, 8596intex-0071050). In 2015,

. (Ex. I, 3950INTEX-00191071).

Finally, in 2015,

. (Ex. I, 3950INTEX-00166981). However,

However, any relevant emails demonstrating Mr. Lin's clear involvement in this scheme were intentionally deleted by Intex Xiamen[18] just months after Bestway first identified the Comfort Quest as invalidating prior art. (3950 ECF No. 298-1, p. 33; *see* also Ex. E).

Intent can also be inferred as IRC admits that

(Ex. E). "[W]hen a company or organization has a document retention policy, *it 'is obligated to suspend' that policy and 'implement a 'litigation hold' to ensure the preservation of relevant documents'* after the preservation duty has been triggered." *Apple*, 881 F. Supp. 3d at 1137 (N.D. Cal. 2012)(emphasis added). As such, courts have found a party's failure to suspend its

_____

[18] The above-referenced emails were produced from other custodians and not from Mr. Lin.

internal document destruction policy after a likelihood of litigation arises, like Intex's, constitutes a willful violation of the duty to preserve. *Id.* at 1147 (finding Samsung's spoliation willful or intentional where company failed to suspend its automatic destruction policy); *Montoya*, 2013 WL 6705992, at *9 (finding defendant violated duty to preserve by, in part, failing to suspend automatic deletion of ESI).

Additionally, IRC submitted sworn statements attesting that after asking Intex Xiamen to produce ESI belonging to Mr. Lin, Intex Xiamen responded that it refused to provide the ESI. (ECF No. 158-3, ¶¶6-7). "While this representation [may] have been technically true, it was extremely misleading in context." *Id.* at *16. While Intex Xiamen may have refused to provide the ESI, it is clear that Intex Xiamen could not provide Mr. Lin's ESI even if it wanted to because it was intentionally destroyed "despite being under a duty of preservation." *Id.* Despite having an opportunity to clarify this, IRC chose not to and instead misled by omission. *See N.T.A.A., et al., v. NORDSTROM, INC., et al.*, 2024 WL 1723524, at *1 (C.D. Cal. Apr. 19, 2024) (finding where plaintiff failed to clarify its relationship with third party despite opportunity to do so, plaintiff misled by omission and court properly sanctioned plaintiff for the discovery misconduct).

Intent can also be inferred here because IRC knew that Mr. Lin's ESI would be relevant to this litigation at least as early 2014 when Faegre sent demand letters specifically referencing or enclosing the published patent applications that list Mr. Lin as an inventor. *Microvention*, 2023 WL 7476998, at *16; *see also Leon*, 464 F.3d at 959 (finding spoliator's actions willful where party knew he had a duty to preserver information on his laptop and intentionally destroyed them anyways).

Finally, IRC's failure to comply with the Magistrate's Order and the Court's Order denying IRC's Application for Stay further demonstrates IRC's intent and willfulness. *See Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *8 (N.D. Cal. Mar. 28, 2022), *report and recommendation adopted,* 2022 WL 17371092

1  (N.D. Cal. Oct. 17, 2022)("Intent cannot be clearer when the District Court gave
2  such an explicit, detailed explanation of Defendants' obligations and when
3  Defendants blatantly defied that specific order.").

4          **2.**    ***A Case Termination Sanction Is Warranted.***

5        "Dismissal is an available sanction when 'a party has engaged deliberately in
6  deceptive practices that undermine the integrity of judicial proceedings…'" *Leon*,
7  464 F.3d at 958. In addition to intent, courts consider a number of factors when
8  determining whether to terminate, including "(1) the public's interest in expeditious
9  resolution of litigation; (2) the court's need to manage its docket; (3) the risk of
10 prejudice to the other party; (4) the public policy favoring the disposition of cases
11 on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life*
12 *Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007)(*citing*
13 *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)).

14       While the *Malone* factors provide a framework for the court, they are not
15 conditions precedent that the court must follow. *Id.* at 1906. Instead, the most
16 important factor is "whether the discovery violations 'threaten to interfere with the
17 rightful decision of the case.'" *Id.* at 1097 (citation omitted). Moreover, the court
18 must make a finding of "willfulness, fault, or bad faith," and consider the availability
19 of less severe sanctions. *Leon*, 464 F.3d at 958 (internal citations omitted).

20             (a)    *Because IRC's Spoliation Was Willful and Done in Bad*
21                     *Faith, Dismissal is an Appropriate Sanction.*

22       Here, IRC's spoliation of evidence was willful because IRC had "some notice
23 that the documents were potentially relevant to the litigation before they were
24 destroyed." *Leon*, 464 F.3d at 959. Indeed, Intex Xiamen destroyed Mr. Lin's ESI
25 in      four years after its duty to preserve started. IRC cannot credibly deny it had
26 notice that Mr. Lin's ESI was potentially relevant before      when Faegre sent
27 demand letters threatening litigation against Bestway as early as 2014 arising from

28

1  patent applications listing Mr. Lin as an inventor. (Ex. C; ECF No, 189-1, pp. 2-3).
2  As such, IRC had notice that Mr. Lin's ESI was potentially relevant as early as 2014,
3  but failed to preserve it, demonstrating willfulness. *Id.*

4      IRC's spoliation was also done in bad faith. Specifically, IRC baselessly
5  argued it had no control over the Intex Xiamen ESI in its efforts to hide relevant
6  information, forcing the parties and this Court to expend resources over the course
7  of several months to brief and consider this issue. IRC had no reasonable basis to
8  claim it had no control over the Intex Xiamen ESI as the contract between IRC and
9  Intex Xiamen specifically required Intex Xiamen to "cooperate with [IRC] in ***every***
10 ***way possible in obtaining evidence and going forward with […] litigation***"
11 regarding the Asserted Patents in this case. (ECF No. 144-6, p. 7, emphasis added).

12     Yet, IRC and Intex Xiamen obstructed discovery by (i) submitting misleading
13 declarations suggesting that Intex Xiamen possessed Mr. Lin's ESI but refused to
14 produce it; (ii) by improperly attempting to contract around this contract by filing an
15 Acknowledgement and Agreement purporting to relieve Intex Xiamen of its
16 contractual obligations; and (iii) refusing to comply with either the Discovery Order
17 or the Court's Order denying IRC's Application for Stay. All the while, neither IRC
18 nor Intex Xiamen could produce Mr. Lin's emails because they were destroyed, and
19 IRC failed to inform Bestway of this despite its requests in November of 2023.

20     As such, Intex needlessly delayed this litigation to cover up its spoliation, and
21 has effectively prevented full enforcement of the Court's March 11 Order requiring
22 IRC to produce the Intex Xiamen ESI, because Mr. Lin's emails—which were
23 ordered to be produced—were destroyed. This is a hallmark showing of bad faith.
24 *See Facebook*, 2022 WL 2289067, at *9 ("Bad faith is demonstrated by 'delaying or
25 disrupting the litigation or hampering enforcement of a court order.'" *Id.* at 961
26 (internal citations omitted). Termination sanctions are therefore appropriate here.
27 *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *11 (C.D.
28

Cal. Feb. 27, 2020), *report and recommendation adopted,* 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020)("Terminating sanctions may be warranted where a party is no longer able to present its case, spoliation occurs in direct violation of a court order, where a party has obviously engaged in deceptive practices during litigation, or where a court anticipates continued deceptive misconduct.")

> (b)    *The* Malone *Factors favor dismissal.*

"Where a court order is violated, the first two [*Malone*] factors support sanctions and the fourth factor cuts against a default." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990). Because IRC has already violated two separate court orders requiring it to produce Intex Xiamen ESI, the same is true here. *Id.* (*See generally* ECF No. 164; *see also* ECF No. 202, p. 11, deferring ruling on Motion to Show Cause "to allow Plaintiff ***a final opportunity to comply*** with the Magistrate Order…")(emphasis added). Therefore, the third and fifth *Malone* factors are decisive in this case. *Id.*

The third *Malone* factor considers the risk of prejudice to the party seeking sanctions. *Conn. Gen.*, 482 F.3d at 1096. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412. A "plaintiff's failure to produce documents as ordered meets that standard […] because defendants 'cannot prepare for trial if [the] plaintiff refuses to provide information regarding the facts, witnesses, and evidence…'" *Sanchez v. Rodriguez*, 298 F.R.D. 460, 473 (C.D. Cal. 2014); *see also Adriana*, 913 F.2d at 1412.

This factor is easily met here. IRC cannot produce Mr. Lin's ESI as ordered because it was destroyed. As such, Bestway is unable to obtain seminal information on key aspects of this case including conception, reduction to practice, development, applicability or practicality of a commercial product that incorporates the asserted claims, interpretation of the language used by Mr. Lin as an inventor of the Asserted

Patents, the alleged inventive aspects of the asserted claims, the strengths and weaknesses of the asserted claims, and the value added by the asserted claims. At a minimum, these issues are relevant to infringement, invalidity, and damages. Bestway, however, is unable to test the veracity of the allegations and claims made by IRC on these issues due to IRC's spoliation.

Dismissal is also appropriate when "a party [like IRC] has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings…" *Leon*, 464 F.3d at 958. In this case, IRC withheld the fact that Mr. Lin's ESI was intentionally deleted until *after* the Court denied its Motion for Review, giving IRC "a ***final opportunity to comply*** with the Magistrate Order" and produce Intex Xiamen ESI, including Mr. Lin's emails. (ECF No. 202, p. 11)(emphasis added). IRC had multiple opportunities to disclose this fact—including when Bestway specifically asked IRC to confirm Mr. Lin's ESI had been preserved—but chose not to (presumably in hopes it would successfully challenge the Magistrate's Discovery Order requiring IRC to produce Intex Xiamen ESI).

IRC's deception is also reflected by its collusion with Intex Xiamen to avoid producing Mr. Lin's ESI by entering into an Acknowledgement and Agreement purporting to "un-do" their previous Assignment contract requiring Intex Xiamen "to cooperate with [IRC] in every way possible in obtaining evidence and going forward with […] litigation" regarding the Asserted Patents. (ECF No. 144-6, at p. 7). Finally, even though the Court has definitively held that IRC has legal control over Intex Xiamen, IRC nonetheless continues to deny legal control.

Given IRC and Intex Xiamen's deceptive practices in this case and the intentional deletion of Mr. Lin's ESI     years after Intex filed the 3950 Litigation, neither Bestway nor this Court can be certain that IRC will comply with its discovery obligations. How can Bestway be sure that Intex Xiamen will produce all responsive ESI in compliance with this Court's orders when IRC maintains it has no legal

1  control over Intex Xiamen? When Intex Xiamen has intentionally deleted ESI this

2  Court ordered be produced? IRC's actions have tainted the integrity of these

3  proceedings and Bestway cannot prepare for trial given IRC's destruction of relevant

4  ESI. *Leon*, 464 F.3d at 958 (holding dismissal is appropriate where a party's

5  deceptive practices taint the integrity of the proceedings).

6      The fifth *Malone* factor considers "the availability of less drastic sanctions."

7  *Conn. Gen.*, 482 F.3d at 1096. This factor is met if (1) the court discusses the

8  "feasibility of less drastic sanctions and explain[s] why alternative sanctions would

9  be inappropriate;" (2) implemented alternative sanctions before dismissal; and (3)

10 warned "of the possibility of dismissal before actually ordering dismissal…"

11 *Adriana*, 913 F.2d at 1412–13. Here, less dramatic sanctions would not be

12 appropriate. Indeed, the Court previously deferred ruling on Bestway's Motion to

13 Show Cause to allow IRC "a final opportunity to comply with the [Discovery]

14 Order." (ECF No. 202, p. 11). But IRC knew it could not comply with the Discovery

15 Order because Mr. Lin's ESI was destroyed in ___, and IRC failed to disclose this

16 when Bestway first asked. As such, IRC's actions have demonstrated that less

17 dramatic sanctions are not warranted here. *See Transamerica Life Ins. Co. v.*

18 *Arutyunyan*, 93 F.4th 1136, 1148 (9th Cir. 2024)(finding trial court had implement

19 alternative sanctions before default by allowing violator multiple opportunities to

20 comply with court order).

21      Moreover, while the Court has not explicitly warned IRC of the possibility of

22 dismissal, IRC nonetheless had prior notice and warning because the threat of case

23 terminating sanctions was raised previously in Bestway's Motion to Show Cause,

24 which the Court deferred ruling on to allow IRC "a final opportunity to comply with

25 the Magistrate Order." (ECF No. 202, p. 11). *See Anheuser-Busch, Inc. v. Nat.*

26 *Beverage Distributors*, 69 F.3d 337, 353 (9th Cir. 1995)("We have specifically

27 stated 'an explicit warning is not always necessary.'")(internal citation omitted); *see*

28

1   *also Ahearn v. Redondo Beach Police Dep't*, 2009 WL 728463, at *10 (C.D. Cal.

2   Mar. 18, 2009)(finding court provided sufficient warning when it advised the parties

3   "it would entertain a motion by defendants for case dispositive sanctions after the

4   Court was advised that plaintiff had failed to comply with the Court's […] discovery

5   order.")

6       Accordingly, because four of the five *Malone* factors are satisfied, the Court

7   should dismiss this action as a sanction for IRC's spoliation under Rule 37(e).

8   Alternatively, the Court should issue the strongest possible adverse inference

9   instruction, and preclude IRC from relying or presenting documents from Intex

10  Xiamen related to the development and history of the Asserted Patents, as well as

11  documents related to research, design, and conception.

12  ## VI.   IRC'S ARGUMENT

13      As explained in greater detail in IRC's Statement of Facts above (*supra*, § IV),

14  the summary below contains the key facts and dates related to this issue:

15  - **July 2014-November 2015:** IRC sent letters to Bestway explaining that it had

16      "introduced its Dura-Beam™ Technology," it was "pursuing intellectual

17      property protection" regarding the same," and identified two sets of infringing

18      products, Bestway's Comfort Cell™ products and the Accused Spas, that IRC

19      would pursue remedies for if Bestway failed to cease sales of the same. (*See*

20      Caloiaro Decl., Ex. C at 1; *see* DeAmicis Decl. at ¶ 5, Ex. 2.)

21  - **September 2017:** Bestway first began selling the Accused Beds. (DeAmicis

22      Decl. ¶ 6, Ex. 3.)

23

24

25

26  - **June 2019:**

27      (*See e.g.*, Whalen Decl. ¶ 8.)

28

- **July 11, 2019:** IRC's counsel sent a letter to Bestway notifying Bestway of its intent to file "one or more lawsuits" related to the Accused Beds if Bestway did not cease sales of the same. (*See e.g.*, DeAmicis Decl. ¶ 13, Ex. 9.)

- **February 17, 2021 – April 4, 2023:** During fact discovery in the Spa Case and well into this case, Bestway did not contest IRC's argument that did not have possession, custody, or control of Intex Xiamen ESI. (*See supra*, 21:3-18.)

- **October 10, 2023:** Bestway moved, for the first time, to compel Intex Xiamen ESI, arguing that IRC had control over Intex Xiamen ESI. (*See e.g.*, DeAmicis Decl. ¶ 19, Ex. 15.) IRC opposed the Motion, asserting its long-held, reasonable belief that it did not have possession, custody, or control over Intex Xiamen ESI (*See id.*)

- **October 30, 2023:** the Magistrate granted Bestway's Motion to Compel, finding that IRC had legal control, based on a single boilerplate provision in an assignment agreement, over "Intex Xiamen's custodians and Intex Xiamen's ESI" (ECF No. 154, at 7.)

- **November 10, 2023**: IRC files its Motion to Review the Magistrate's Order, again asserting its long-held reasonable belief that it did not have possession, custody, or control over Intex Xiamen ESI (*See* DeAmicis Decl. ¶ 20, Ex. 16.)

- **March 11, 2024:** The Court denied IRC's Motion for Review. (ECF No. 202.)

- ⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜⬜ (Hsu Decl. at ¶ 8; Whalen Decl. at ¶¶ 3-4.)

As explained below, these facts confirm that (1) IRC had no duty to preserve Mr. Lin's ESI in this Matter at the time it was lost; (2) even if IRC did have a duty to preserve in this Matter, IRC did not have any intent to deprive Bestway of Mr. Lin's ESI; and (3) even if (i) IRC's duty to preserve arose prior to when Mr. Lin's ESI was

1  lost (it did not); and (ii) IRC intended to deprive Bestway of the same (it did not),
2  IRC's conduct should not result in any sanctions, let alone the extreme remedy of
3  case-terminating sanctions.

     **A.**    **IRC Did Not Have a Duty to Preserve Mr. Lin's Lost ESI**

          **1.**    **As of 2014, IRC Had No Duty to Preserve Any Evidence in this Matter, Let Alone Evidence from a Non-Party**

7  In order to prove spoliation, Bestway must first prove that IRC had a duty to
8  preserve evidence before Mr. Lin's ESI was lost. *U.S. v. Maxxam, Inc.*, 2009 WL
9  817264, at *14 (N.D. Cal. Mar. 27, 2009) ("Defendants cannot be held liable for
10  evidence that was destroyed or lost before they had an obligation to preserve it.").
11  Bestway fails to prove that IRC had a duty to preserve evidence before Mr. Lin's
12  ESI was lost in the ordinary course of business. Bestway asserts that IRC's duty to
13  preserve evidence in this Matter "arose as early as 2014 when this litigation was
14  threatened." (*See supra*, 31:6-8.) In support of its assertion, Bestway makes three
15  arguments: (1) IRC's 2014 / 2015 letters triggered its duty to preserve in this Matter
16  (*supra*, 29:22-30:10); (2) IRC "knew Tony Lin's ESI was relevant" to this litigation
17  "as early as 2014 (*supra*, 30:11-24); and (3) "Intex Xiamen had its own independent
18  duty to preserve Mr. Lin's emails in 2014" (*supra*, 31:12-15). Bestway's arguments
19  are nonsensical and wrong.

20  **First**, Bestway points to IRC's 2014 / 2015 letters and argues that they
21  triggered IRC's duty to preserve in this Matter. (*See supra*, 29:22-30:10.) As
22  explained above, those letters identified (1) ***different*** products not at issue in this
23  Matter—i.e., they related to Bestway's since-discontinued Comfort Cell products
24  (again, not Comfort Quest) enjoined by an ITC Order; and (2) the Accused Spas at
25  issue in the Spa Case. (*See* Caloiaro Decl., Ex. C at 1.; DeAmicis Decl. ¶ 4, Ex. 1;
26  DeAmicis Decl. ¶ 5, Ex. 2.) Thus, while Bestway attempts mislead the Court

otherwise, the letters are irrelevant to IRC's duty to preserve in this Matter.[19] *See In re Google Play Store Antitrust Litig.,* 664 F. Supp. 3d 981, 992 n.4 (N.D. Cal. 2023) ("Plaintiffs made some effort at the evidentiary hearing to move this [duty to preserve] date forward by referencing document requests issued in other cases that are not a part of this MDL. The [Rule 37(e)] Committee Notes advise that '[t]he fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case.' The Court focuses on the August 2020 time period for this MDL."). At most, IRC's 2014 / 2015 letters, relating to separate Bestway products at issue in other matters, evince a "general concern over litigation" with Bestway and its improper business practices, which is not enough to trigger IRC's duty in this Matter. *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009) ("A general concern over litigation does not trigger a duty to preserve evidence").

Moreover, as explained above, IRC had no knowledge (and indeed, could not have had knowledge) of the Accused Beds until many years after these letters. (*See supra*, 21:20-22:5.) Bestway does not (and cannot) explain how IRC could have

---

[19] Notably, the ESI Order in this Matter restricts parties from using documents produced in this Matter in the Spa Case except for impeachment purposes. (*See* DeAmicis Decl. ¶ 14, Ex. 10 at ¶8.) This further supports that the cases are separate and distinct and that IRC's duty to preserve in this Matter did not arise any earlier than when this Matter was reasonably foreseeable.

)

1  anticipated this litigation in 2014 with respect to the Accused Beds, which

2  indisputably **did not even exist until September 2017**. *See e.g.*, *HighMark Digital,*

3  *Inc. v. Casablanca Design Centers, Inc*., 2019 WL 13038414, at *4 (C.D. Cal. Oct.

4  3, 2019) ("Plaintiff has not demonstrated that Defendants had an obligation to

5  preserve the email account at the time it was destroyed. The deletion occurred well

6  before Defendant Dave Winter's resignation from HighMark in July 2015 and nearly

7  four years prior to Plaintiff filing its July 2018 complaint.") (internal citations

8  omitted). That is, as of 2014, litigation over the Accused Beds was not even a

9  possibility, much less a probability. *In re Napster*, 462 F. Supp. 2d at 1068 ("The

10  future litigation must be 'probable,' which has been held to mean 'more than a

11  possibility.'") (internal citations omitted).

12      Relatedly, Bestway's cited caselaw, (*supra*, 30:5-10) is inapposite. For

13  example, in *Starline*, the Plaintiffs "explicitly threatened litigation" involving the

14  subject of its potential claims as of February 2012. *Starline Windows Inc. v. Quanex*

15  *Bldg. Prod. Corp*., 2016 WL 4485568, at *10 (S.D. Cal. Aug. 19, 2016).

16  Consequently, the Court found that the Plaintiff's duty to preserve evidence arose as

17  of February 2012. *See id.* Here, IRC's 2014 /2015 correspondence did not (and could

18  not have) "explicitly threaten[ed] litigation" related to the products accused of

19  infringement in this Matter, precisely because they did not exist at the time. (*See*

20  *supra*, 21:20-22:5.) Thus, *Starline* is inapposite.

21      As for *Microvention*, Bestway simply cites the case for the proposition that

22  "[e]vidence that a defendant actually anticipated litigation might include emails or

23  meeting minutes discussing potential litigation, actions taken to retain a lawyer, or a

24  company budget that allocates funds for potential litigation." 2023 WL 7476998, at

25  *3 (C.D. Cal. Oct. 5, 2023); (*supra*, 30:8-10.) If anything, *Microvention* confirms

26  that, in fact, IRC's duty to preserve evidence in this Matter did not arise in 2014 but,

27  instead, arose as of June 2019,

28

1                                                           which ultimately

2 resulted in filing the Complaint in this Matter.

3           Specifically, as discussed, Bestway first began selling the Accused Beds in

4 the 2017/2018 timeframe. (*See supra*, 21:20-23.)

5

6                                 (*See e.g.*, DeAmicis Decl. ¶ 12, Ex. 8.)

7

8                                 (*See id.*) Rather, it was not until June 2019

9 that

10                                 (*See e.g.*, Whalen Decl. ¶ 8.) The June 2019

11 investigation resulted in a letter from IRC's counsel to Bestway, which (1) identified

12 one of Bestway's "TriTech™" airbeds and (2) stated that IRC was planning on filing

13 "one or more lawsuits" related to Bestway's "TriTech™" airbeds if Bestway did not

14 cease sales of the same. (DeAmicis Decl. ¶ 13, Ex. 9.) Accordingly,

15                                                      until June

16 2019, that is when IRC's duty to preserve evidence in this Matter was triggered. *See*

17 *e.g.*, *Martinez v. Equinox Holdings, Inc*., 2021 WL 6882152, at *3 (C.D. Cal. Oct.

18 22, 2021) (finding plaintiff's duty to preserve evidence "was likely triggered in July

19 2020, when [Plaintiff] consulted with attorneys regarding this suit"); *accord Laub v.*

20 *Horbaczewski*, 2020 WL 9066078, at *5 (C.D. Cal. July 22, 2020) ("[T]he Court

21 finds that Plaintiff Laub had a duty to preserve text messages concerning DRL and

22 that duty developed no later than January 2016, when Plaintiffs evinced a shared

23 intent to sue and began formulating a plan to file a lawsuit and Plaintiff Laub began

24 preserving some of his text messages").

25           **Second**, Bestway argues that because "IRC knew Tony Lin's ESI was

26 relevant as early as 2014," and because Mr. Lin is an alleged "key player", IRC's

27 duty to preserve arose in 2014. (*See supra*, 30:11-24.) Bestway's argument regarding

28

1    the supposed "relevance" of Mr. Lin's ESI is itself irrelevant. As an initial matter,

2    Bestway's arguments about Mr. Lin being a "key player" are undermined by its own

3    conduct in the Spa Case. Specifically, and as explained above, IRC made the exact

4    same objections about how it did not have possession, custody, and control of Intex

5    Xiamen ESI (including Mr. Lin's ESI) in the Spa Case, and Bestway did not

6    challenge that objection. (*See supra*, 21:3-18.) In fact, Bestway quickly dropped its

7    identification of Mr. Lin in response to IRC's arguments. (*See id*.) Bestway cannot

8    now claim that Mr. Lin is a "key player" related to this Matter when Bestway did

9    not even pursue that discovery in the Spa Case.

10        Regardless, the supposed relevance of Mr. Lin back in 2014 is beside the point

11    because IRC's duty to preserve evidence in this Matter did not arise at that time. As

12    explained in detail above, IRC's duty to preserve evidence in this Matter did not

13    arise until, at the earliest, June 2019. (*See supra*, 47:3-24.)

14        **Third**, Bestway asserts that "Intex Xiamen had its own independent duty to

15    preserve Mr. Lin's emails in 2014." (*See supra*, 31:12-14.) Again, this is inaccurate.

16    As a preliminary matter, there is no dispute that Intex Xiamen is not a party to this

17    case. (*See e.g.*, ECF No. 85.) Intex Xiamen is

18    . (*See supra*,

19    20, fn 11.) Bestway has provided no rationale for how ***Intex Xiamen*** had any duty

20    to preserve evidence in a case to which it is not a party. Indeed, the only caselaw

21    Bestway cites for its argument is *Starline*, which dealt with a ***party's*** duty to preserve

22    evidence, not a non-party's. *See Starline*, 2016 WL 4485568, at *10.  In addition, to

23    the extent Intex Xiamen ever had a duty to preserve evidence in this Matter, such a

24    duty did not trigger until June 2019—after Mr. Lin's ESI was lost. (*See supra*, 47:3-

25    24); *Maxxam,* 2009 WL 817264 at *14.

26        Finally, Bestway's assertion that the parties' duty to preserve evidence in this

27    Matter arose in 2014 is undermined by Bestway's own apparent destruction of post-

28

1   2014 ESI. Specifically, on May 3, 2024, counsel for IRC sent a letter to Bestway

2   stating that "to the extent preservation obligations did arise by [October 2, 2014],

3   Bestway's ESI productions appear to be deficient or inconsistent with such

4   obligations." (DeAmicis Decl. ¶ 28, Ex. 22.) In particular, IRC identified three

5   Bestway custodians—Mr. Vartola, Mr. You, and Mr. Yan—for which Bestway

6   failed to provide ESI reaching back to 2014. (DeAmicis Decl. ¶ 28, Ex. 22.) IRC

7   went on to ask Bestway to explain this deficiency. (*See id*.)

8        In response, Bestway explained that, for Mr. Vartola, he was "employed with

9   Bestway Inflatables" (a named defendant in this Matter) from October 2013 to

10  November 2015. (DeAmicis Decl. ¶ 29, Ex. 23 at 202.) Bestway further explained

11  that, when Mr. Vartola transitioned to working at Bestway (USA) Inc., "he was no

12  longer an employee of Bestway Inflatables and was issued a new email and a new

13  laptop." (*See id*.) Consequently, IRC understands that Bestway no longer possesses

14  Mr. Vartola's ESI from when he worked at Bestway Inflatables (once again, a named

15  defendant in this Matter), including ESI that was created between October 2, 2014

16  through November 2015. Bestway also admitted that it no longer possesses ESI from

17  Mr. You (before March 17, 2016) and Mr. Yan (before November 19, 2016).

18  (DeAmicis Decl. ¶ 29, Ex. 23 at 202.) That is, Bestway itself has failed to preserve

19  evidence from when it itself asserts the parties duty to preserve evidence arose,

20  further undermining its position on this issue.[20]

21       Therefore, despite Bestway's assertions otherwise, IRC's duty to preserve

22  evidence in this Matter did not arise in 2014, but was triggered, at the earliest, in

23  June 2019—***well after*** Mr. Lin's ESI was lost                    . (*See* Hsu Decl., ¶¶

24  6-7; Huang Decl. ¶ 5.) Thus, IRC cannot be found to have spoliated evidence. *See*

25  _____

26  [20]  To the extent that the Court finds that a duty to preserve evidence arose in 2014
     (which IRC does not agree with), IRC intends to file a spoliation motion related
27   to Bestway's failure to preserve evidence from Mr. Vartola, Mr. Yan, and Mr.
     You.

28

*Putscher v. Smith's Food & Drug Centers, Inc.*, 2014 WL 2835315, at \*8 (D. Nev. June 20, 2014) ("Accordingly, no spoliation occurred because Smith's duty to preserve arose after the surveillance footage was destroyed in the ordinary course of business."); *Maxxam*, 2009 WL 817264, at \*14 ("Accordingly, Defendants cannot be held liable for evidence that was destroyed or lost before they had an obligation to preserve it.").

### 2.   IRC's Duty to Instruct Intex Xiamen to Preserve ESI Did Not Arise Until the Court's Order Denying IRC's Motion For Review

Not only did IRC's duty to preserve any evidence in this Matter not trigger until June 2019, but its duty to preserve the Intex Xiamen ESI did not arise until the Court's Order Denying IRC's Motion for Review.

Specifically, and as discussed above, throughout both the Spa Case and this Matter, IRC has held the reasonable belief that it does not have possession, custody, or control of Intex Xiamen's ESI—including the ESI of Mr. Lin. (*See supra*, § IV.A.) Indeed, for years, Bestway did not even dispute that position. (*See supra*, 21:3-18.) It was not until the Court's March 2024 Order (ECF No. 202) finding that IRC had control over Intex Xiamen ESI, based on a single boilerplate provision in an assignment agreement, that IRC's duty to preserve the same was triggered.[21] *See e.g.* Fed. R. Civ. P. 37 2015 Amendment Committee Notes ("The duty to preserve may in some instances **be triggered or clarified by a court order** in the case.") (emphasis added). Regardless, Bestway asks this Court to retroactively apply its

---

[21]   While Bestway asserts that IRC is arguing, at present, that it "had no duty to preserve Mr. Lin's ESI because…it has no control over Intex Xiamen information," (*see supra*, 31:2-6) that is not true. Instead, while IRC respectfully disagrees with the Court's control finding, based on a single boilerplate provision in an assignment agreement, (and maintains its appellate rights regarding the issue), IRC argues that it had no duty to preserve non-party Intex Xiamen's ESI at the time Mr. Lin's ESI was lost.

March 2024 Order (ECF No. 202) by a decade and find that IRC's duty to preserve the Intex Xiamen ESI arose in 2014. (*See supra*, § V.A.)

However, Bestway's argument would subject IRC to "an evidentiary Catch-22":

> [A] party's duty to preserve evidence in advance of litigation must be predicated on something more than an equivocal statement of discontent, particularly when that discontent does not crystalize into litigation for nearly two years. Any other conclusion would confront a putative litigant with an intractable dilemma: either preserve voluminous records for an indefinite period at potentially great expense, or continue routine document management practices and risk a spoliation claim ... in the future.

*Price v. Peerson*, 2014 WL 12558253, at *8 (C.D. Cal. Apr. 23, 2014), *aff'd*, 643 F. App'x 637 (9th Cir. 2016). In short, to hold now, in 2024, as Bestway urges this Court to do, that IRC's duty to preserve evidence in this Matter (1) arose back in 2014; and (2) retroactively applies and extends to third-party Intex Xiamen ESI ( ) would unfairly punish IRC for pursuing its reasonable litigation positions.

Finally, while Bestway asserts that "courts have found that parties who have legal control over a third party's information (like IRC) have a duty to direct the third party to preserve relevant evidence," that caselaw is inapposite.

For example, the out-of-district *Felman* case is inapposite for at least two reasons. (*See supra*, 31:18-32:7.) First, unlike here, the party accused of spoliation in *Felman* did not have a reasonable (and long-held) belief that it lacked legal control of a third party. 2011 WL 4547012 at *11 (S.D.W.Va. Sept. 29, 2011) (finding Felman's argument that "it was not unreasonable for Felman to believe before August 2010 that it did not have legal control over the PIT documents" to have "no merit."). Second, unlike here, the lost evidence in *Felman* occurred after Felman's

duty to preserve triggered in the case. *Id.* at *10-11. Accordingly, Bestway's reliance on *Felman* is misplaced.

Bestway's reliance on the out-of-district *Pine Top* case is similarly inapposite. Specifically, unlike here, there was no evidence that the plaintiff in *Pine Top* had a long-held, reasonable belief that it lacked legal control of the third party. 2013 WL 3776971, at *2-3 (N.D. Ill. July 18, 2013). Additionally, unlike here, any documents that were potentially destroyed in *Pine Top* occurred after plaintiff's duty to preserve arose. *See id.* at *2. As such, Bestway's reliance on *Pine Top* is similarly misplaced.

**B.** **Even If IRC had a Duty to Preserve Mr. Lin's ESI, Bestway Cannot Show that IRC had an Intent To Deprive Bestway, Making Case Terminating Sanctions Inapplicable**

As Bestway concedes, Rule 37 applies to this issue. (*See supra*, 7:17-20 (Bestway asserting that "the language of Rule 37(e) forecloses the reliance on the court's 'inherent authority' to determine whether terminating sanctions were appropriate."). Further, and as Bestway also acknowledges, *supra,* 33:10-12, because Bestway is asking for case terminating sanctions, Rule 37(e)(2) applies and Bestway must show that IRC "acted with the intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e)(2) (noting that "dismissal" is only available upon finding that the party "acted with the intent to deprive another party of the information's use in litigation.").

In its attempt to meet this high standard, Bestway once again continues its parade of inaccuracies to attempt to support its baseless request for extreme, case terminating sanctions. However, Bestway's conspiracy theory regarding the "timing" in which Mr. Lin's ESI was lost is based entirely on assumptions and speculation; there is no evidence of any level of intent—circumstantial or otherwise—to support its arguments. (*Supra*, 33:18-35:18.) Furthermore, Bestway's attempt to point to conduct that allegedly "infer[s]" an intent to deprive only

confirms that any such intent is lacking here. (*Supra*, 35:19-37:3.)

      **1.**    **Bestway's Conspiracy Theory Regarding the "Timing" of any Alleged Spoliation Fails to Show The Requisite Intent.**

Bestway's primary argument is based on an unsupported conspiracy theory that IRC intentionally "deleted Mr. Lin's ESI" in an effort to "hide unfavorable evidence from Bestway related to the" alleged prior art Comfort Quest Model #67353 (the "Comfort Quest Reference"). (*See supra*, 33:18-20.) Bestway is wrong.

As an initial matter, and as Bestway concedes just a few sentences later (*see supra*, 33:24-34:1), **IRC** did not "delete Mr. Lin's ESI"—Mr. Lin's ESI was lost when

(*See* Hsu Decl., ¶ 7; *see also* Hsu Decl., ¶ 3, Ex. A.) Further, Bestway's conspiracy theory is nothing more than rank speculation. Bestway merely points to the timing of its identification of the Comfort Quest Reference in the Spa Case, compares it to the timing of Mr. Lin's lost ESI (                                    ), and asks this Court to conclude that intentional deletion of evidence occurred warranting ***termination*** of this Matter. (*See supra*, 33:18-34:6.) Bestway's pure speculation is not evidence and falls far short of showing that IRC intended to deprive Bestway of anything in this litigation.[22] *See e.g.*, *Gault v. United States*, 2022 WL 4292340, at *9 (C.D. Cal. Aug. 23, 2022), *report and recommendation adopted*, 2022 WL 4291320 (C.D. Cal. Sept. 15, 2022) ("Mere speculation is an insufficient basis for a finding of spoliation.") (citations omitted); *accord Johnson v. L'Oreal USA*, 2020 WL 5530022, at *4 (S.D.N.Y. Sept. 15, 2020) ("Mere speculation is not enough—Plaintiff must produce evidence of L'Oréal's intent to deprive Plaintiff of ESI in this litigation.").

---

[22] Bestway's argument regarding apparently needing more discovery with respect to the Comfort Quest Reference is contradicted by its pending Motion to Stay discovery in this case in which argues that discovery regarding invalidity and estoppel should be stayed. (*See* ECF No. 200.)

1    The only actual **evidence** shows that, in 2016,

2    . (Huang Decl. ¶ 3; Hsu Decl. ¶ 4.)

3

4    . (Huang Decl. ¶ 4; Hsu Decl. ¶ 4.)

5

6    . (*See* Hsu Decl. ¶ 5; Huang Decl., ¶ 5.)

7

8

9    (*See* Hsu Decl. ¶¶ 5-6; Huang Decl., ¶ 5.)

10

11    . (Huang Decl. ¶ 5; Hsu Decl. ¶ 3, Ex. A; Hsu Decl. ¶6, Ex. B.)

12

13    . (Huang Decl. ¶ 5; Hsu Decl. ¶ 7; Hsu Decl. ¶ 3, Ex. A; Hsu Decl. ¶ 6,

14    Ex. B.)

15    (Huang Decl.

16    ¶ 6; Hsu Decl. ¶ 9.)

17

18    (Huang Decl. ¶ 7; Hsu Decl. ¶ 10.)[23]

19    Accordingly, even if IRC did have a duty to preserve Mr. Lin's ESI (it did

20    not), any failure to halt non-party Intex's Xiamen's company policy "does not rise

21    to a reasonable inference of intent." *See e.g.*, *Gelazela v. Santa Ana Police Dep't*,

22    2024 WL 1136338, at *2 (C.D. Cal. Feb. 16, 2024) ("City Defendants' alleged

23    failure to halt their automatic deletion process, without more, does not rise to a

24    reasonable inference of intent").

25    Bestway's reliance on the 2003 deposition transcript of Mr. Zee (IRC

26    President) in support of its "timing" conspiracy theory is inapposite. (*See supra*,

27

28

---

[23] The same is true for employees of IRC. (*See* Whalen Decl., ¶¶ 5-7.)

34:7-16.) As an initial matter, this testimony is from 2003—

(*See* Caloairo Decl., **Exhibit F** – Mr. Zee Dep. Transcript, at 8596intex-0360650).) Bestway does not (and cannot) explain how this testimony is probative of any IRC business practice today, or even since 2003. In addition, Bestway mischaracterizes Mr. Zee's 2003 testimony. Indeed, Mr. Zee never testified, as Bestway asserts, .

(*See supra*, 34:8-10.) Rather, Mr. Zee explained that

(Caloairo Decl., **Exhibit F** – Mr. Zee Dep. Transcript, at 8596intex-0360675; 8596intex-0360673; 8596intex-0360686.) Moreover, despite Bestway's mischaracterizations otherwise, Mr. Zee did not testify that (*See supra*, 34:11-15.) Rather, Mr. Zee testified that

(Caloairo Decl., **Exhibit F** – Mr. Zee Dep. Transcript, 8596intex-0360686.)

Even if Mr. Zee's testimony had any relevance, and if the Court were to look past Bestway's mischaracterizations, the fact that that IRC and Intex Xiamen had, at one time, (*See e.g.*, DeAmicis Decl., ¶ 30, Ex. 24 at 213:9-17))—is completely irrelevant to whether IRC had the requisite intent to deprive Bestway of Mr. Lin's ESI here. *See Pauly v. Stanford Health Care*, 2022 WL 4137579, at *4 (N.D. Cal. Aug. 22, 2022), report and recommendation adopted, 2022 WL 4133298 (N.D. Cal. Sept. 12, 2022) (finding no "intent to deprive" given the party followed a "routine business procedure").

The email correspondence Bestway cites is also irrelevant to Bestway's argument.

1       . (*See e.g*, Caloiaro Decl., **Exhibit I** at 8596intex-

2  0071050; 3950INTEX-00166981.) As explained, Bestway agreed to an ITC consent

3  order prohibiting future sales of Bestway's infringing Comfort Cell products. (*See*

4  ECF No. 85-3.) Despite Bestway's suggestion otherwise, these Comfort Cell

5  products have **nothing to do with Bestway's Comfort Quest products. (***See supra*,

6  35:2-4.) Regardless, and as already explained,

7  

8  . *See Pauly*, 2022 WL 4137579,

9  at *4 (finding no "intent to deprive" given the party followed a "routine business

10 procedure").

11       Finally, Bestway argues, based on a single email correspondence in 2015,

12 

13  (*Supra*, 35:12-15.)

14 Again, Bestway does not (and cannot) explain how a 2015 email correspondence is

15 probative of IRC's business operations today. Moreover, Bestway's identification of

16 a single email hardly evinces a routine business "*practice*" of

17  (*Supra*, 34:4-6.) Finally, even if IRC did have such a "practice,"

18 "there is nothing improper, illegal or inequitable in filing a patent application for the

19 purpose of obtaining a right to exclude a known competitor's product from the

20 market; nor is it in any manner improper to amend or insert claims intended to cover

21 a competitor's product the applicant's attorney has learned about during the

22 prosecution of a patent application." *Kingsdown Med. Consultants, Ltd. v. Hollister*

23 *Inc*., 863 F.2d 867, 874 (Fed. Cir. 1988); *see also id*. ("Any such amendment or

24 insertion must comply with all statutes and regulations, of course, but, if it does, its

25 genesis in the marketplace is **simply irrelevant and cannot of itself evidence**

26 **deceitful intent.**") (emphasis added).

27 

28

1    Accordingly, Bestway's "timing" conspiracy theory fails to evince any intent

2  by IRC to deprive Bestway of Mr. Lin's ESI.

3               **2.    IRC's Conduct Does Not "Infer" Any Intent To Deprive**

4    In addition to its flawed "timing" conspiracy theory, Bestway argues that

5  IRC's alleged intent to deprive can also be "inferred" by conduct (*See supra*, 35:19-

6  21.) More specifically, Bestway argues that IRC's intent to deprive can be inferred

7  because of (1)                                      (*see supra*, 35:19-36:5);

8  (2) IRC's alleged knowledge that Mr. Lin's ESI would be relevant to this litigation

9  in 2014 (*see supra,* 36:18-23); (3) IRC's sworn statements in this Matter (*see supra*,

10 36:6-17); and (4) IRC's alleged violations of Court Orders (*see supra*, 36:24-26).

11 Bestway is wrong on all fronts.

12   **First**, Bestway's argument that IRC's alleged intent to deprive can also "be

13 inferred" because

14 company policy*, (*see supra*, 35:19-36:5), is exactly backwards.

15   Bestway cites to two cases to support this meritless argument: *Apple* and

16 *Montoya*. (*See id*.) However, in each of those cases, the court relied on its "inherent

17 authority to impose spoliation sanctions." *See Apple Inc. v. Samsung Elecs. Co*., 881

18 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012); *Montoya v. Orange Cnty. Sheriff's Dep't*,

19 2013 WL 6705992, at *5 (C.D. Cal. Dec. 18, 2013) ("Accordingly, the Court

20 addresses the applicability of sanctions for spoliation under the Court's inherent

21 powers to manage its own affairs."). That is, neither court applied the analysis of

22 Rule 37(e)(2), and therefore, **neither case required a finding of an "intent to

23 deprive."** *See Apple*, 881 F. Supp. 2d at 1135; *Montoya,* 2013 WL 6705992, at *5.

24   However, as explained, there is no dispute that Rule 37(e)(2) applies to this

25 issue. (*See supra*, 7:17-20 (Bestway asserting that "the language of Rule 37(e)

26 forecloses the reliance on the court's 'inherent authority' to determine whether

27 terminating sanctions were appropriate")); *accord In re Napster, Inc. Copyright*

28

*Litig.*, 462 F.Supp.2d 1060, 1075 n. 4 (N.D. Cal. 2006) ("Sanctions imposed pursuant to a court's inherent powers is governed by a different set of principles than sanctions under Rule 37."). Consequently, under Rule 37(e)(2), even if IRC did have a duty to preserve Intex Xiamen ESI in this Matter before Mr. Lin's ESI was lost (it did not), the loss of Mr. Lin's ESI was due to Intex Xiamen's ▓▓▓▓▓▓▓▓

▓▓▓▓ which supports that there was no "intent to deprive." *See Gelazela v. Santa Ana Police Dep't*, 2024 WL 1136338, at *2 (C.D. Cal. Feb. 16, 2024) ("City Defendants' alleged failure to halt their automatic deletion process, without more, does not rise to a reasonable inference of intent."); *see also Porter v. City and County of San Francisco*, 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (finding "no evidence" that the defendant had "intentionally spoliated" a recorded phone call that was deleted "pursuant to [the defendant's] 2-year ESI retention policy," even though the call was deleted after the defendant was under a duty to preserve evidence).

**Second**, Bestway's argument that intent can be inferred because "IRC knew that Mr. Lin's ESI would be relevant to this litigation at least as early 2014" is also incorrect. As a preliminary matter, and as explained, IRC did not have a duty to preserve evidence in this Matter as of 2014. (*See supra*, § VI.A.) Thus, because IRC did not have a duty to preserve, it equally did not have an intent to deprive Bestway regarding Mr. Lin's ESI. *U.S. v. Maxxam, Inc.*, 2009 WL 817264, at *14 (N.D. Cal. Mar. 27, 2009) ("Accordingly, Defendants cannot be held liable for evidence that was destroyed or lost before they had an obligation to preserve it."). Moreover, throughout both this Matter and the Spa Case, IRC held the good faith, reasonable belief that it did not have control over Intex Xiamen ESI, including Mr. Lin's ESI. (*See supra*, § IV.A.) That reasonable belief was bolstered by Bestway's own conduct and representations when it declined to pursue Intex Xiamen ESI in the Spa Case for years. (*See supra*, 21:3-18.) While the Court eventually found that IRC did, in fact, have control of Intex Xiamen ESI based on a single boilerplate provision in an

58

1   assignment, that finding occurred almost six years after Mr. Lin's ESI was lost.

2   Bestway cannot credibly argue that IRC intended to deprive it of Mr. Lin's ESI when

3   IRC always reasonably believed it did not have control over the same.  *See HiQ*

4   *Labs., Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 978 (N.D. Cal. 2022) ("The most

5   decisive factor [in the intent analysis] is timing"). This is especially true given that

6

7                                                                                       (*See* Hsu Decl. ¶

8   10; Huang Decl. ¶ 7.)

9        Bestway's cited caselaw is also inapplicable. In *Microvention*, the Court

10  found intent could be inferred from the circumstantial evidence because after being

11  named as a defendant in the case and thus after Le's duty to preserve arose, Le

12  located and intentionally and selectively deleted files related to plaintiff from his

13  hard drive. 2023 WL 7476998 at *15-16. These facts are not present here. First,

14  IRC's duty to preserve arose ***after*** Mr. Lin's ESI was lost. (*See supra*, § VI.A.)  And

15  second, unlike in *Microvention*, Mr. Lin's ESI was lost in accordance with a routine

16  business practice. (*See* Hsu Decl. ¶¶ 6-7, 9); *Gelazela v. Santa Ana Police Dep't*,

17  2024 WL 1136338, at *2 (C.D. Cal. Feb. 16, 2024) ("City Defendants' alleged failure

18  to halt their automatic deletion process, without more, does not rise to a reasonable

19  inference of intent"). Moreover, unlike *Microvention*, given Mr. Lin's ESI was lost

20                                                                                    , no specific

21  documents were targeted for deletion. In fact,

22                                                                                    . (Huang

23  Decl. ¶ 7; Hsu Decl. ¶ 10.) As such, *Microvention* is inapposite.

24       Additionally, in *Leon* the Court found plaintiff's spoliation of evidence willful

25  under the court's "inherent authority." *See* 464 F.3d at 958-959. Here, however, as

26  explained, Bestway seeks sanctions under Federal Rule of Civil Procedure 37(e)(2),

27  which requires an "intent to deprive" and "forecloses the reliance on the court's

28

'inherent authority' to determine whether terminating sanctions were appropriate." (*See supra*, 7:17-19.) Accordingly, *Leon*, which discussed sanctions under a "different set of principles," is inapplicable. *See In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1075 n. 4 (N.D. Cal. 2006) ("Sanctions imposed pursuant to a court's inherent powers is governed by a different set of principles than sanctions under Rule 37.").

**Third**, Bestway's argument that IRC's "sworn statements" evince an intent to deprive Bestway of Mr. Lin's ESI is plainly wrong. (*See supra*, 36:6-17.) Specifically, Bestway appears to fault IRC for truthfully notifying the Court about Intex Xiamen's response to its requests regarding producing its ESI. That is irrational, and the Court should reject that argument. *See e.g.*, *Conn. Gen. Life Ins. Co. v New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). ("In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth."). Moreover, Bestway's assertion that IRC "misled by omission," is yet another unfounded and blatantly false assertion. As explained, IRC **did not know** that Mr. Lin's ESI was lost until _____, and as soon as it knew of the same, counsel for IRC promptly notified Bestway on April 1, 2024. (*See supra*, 28:1-5.) For the same reason, Bestway's citation to *Nordstrom*, which involved a plaintiff misrepresenting to the Court that his relationship with a third party was "only a business relationship" when, in fact, that third party was plaintiff's mother, is clearly inapposite here. *N.T.A.A. v. Nordstrom, Inc.*, 2024 WL 1723524, at *1 (C.D. Cal. Apr. 19, 2024).

**Fourth**, Bestway argues that an "intent" can be inferred from "IRC's failure to comply with the Magistrate's Order and the Court's Order denying IRC's Application for Stay." (*See supra*, 36:24-36.) However, Bestway's (unsupported) allegation that IRC violated the Court's Orders is incorrect. Specifically, and as explained, after the Magistrate's Order (ECF No. 154) and the Court's Order

denying IRC's Application for Stay, IRC reached out to Intex Xiamen once more and asked for the Xiamen ESI. (*See supra*, 26:7-11; *accord* DeAmicis Decl. ¶ 21, Ex. 17, ¶6.) However, again, Intex Xiamen explained that it "d[id] not agree to run any e-mail searches." (DeAmicis Decl. ¶ 22, Ex. 18 at 182.) Even so, "in a good faith effort to comply with the Court's ruling in ECF No. 157" IRC provided the information it was able to obtain from Intex Xiamen related to the Intex Xiamen ESI—including the information directly requested by Bestway. (*See supra*, 26:11-17; DeAmicis Decl. ¶ 22, Ex. 18 at 183.) Moreover, when Intex Xiamen did agree, in a good faith effort to abide by the Court's order, to provide Xiamen ESI information for the case, IRC notified Bestway that Intex Xiamen "started these [ESI] collection efforts." (DeAmicis Decl. ¶ 24, Ex. 20 at 190.) To date, IRC has been working diligently with Intex Xiamen to collect, review, and produce Intex Xiamen ESI in this Matter. (DeAmicis Decl. ¶ 26.) Accordingly, there can be no dispute that IRC has fully complied (or is in the process of fully complying) with the Court's Orders here.

Bestway's citation to *Facebook* is inapposite. There, the Court found that Defendants' intent to deprive was evidenced by their "deliberate disobedience of the Court's March 3, 2021 order appointing the Special Master." 2022 WL 2289067, at *8 (N.D. Cal. Mar. 28, 2022). That is, "[d]espite the Court's clear instructions to grant the Special Master unencumbered access to the Ticket Database and any backup copies, Defendants withheld ESI, failed to disclose databases, and deleted backup files." *Id.* Here, IRC did not "deliberate[ly] disobe[y]" the Court whatsoever. Indeed, as explained, in an effort to comply with the Court's Order, IRC asked Intex Xiamen for the Intex Xiamen ESI, to which they refused. (*Supra*, 26:7-11.) Moreover, once Intex Xiamen did agree to provide the same, IRC promptly notified Bestway and, to date, is working diligently with Intex Xiamen to collect, review, and produce Intex Xiamen ESI in this Matter. (DeAmicis Decl. ¶ 26.)

C. **The "Severe" Remedy of A Case Termination Sanction Is Unwarranted.**

"Terminating sanctions are a severe remedy and should be imposed only in extreme circumstances." *Medina v. Boeing Company*, 2022 WL 599021, at *5 (C.D. Cal. Jan. 27, 2022). Bestway has not shown that spoliation even occurred or that IRC intended to deprive Bestway of Mr. Lin's ESI, much less that this is one of the "most egregious cases of misconduct" warranting case-terminating sanctions. *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *12 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

1. **To the Extent Any Spoliation Occurred (Which is Not True), It was Neither Willful nor Done in Bad Faith**

As Bestway implicitly acknowledges, (*see supra*, §V.B.2(a)), even if Bestway has shown that IRC had a duty to preserve Mr. Lin's ESI before it was lost (it did not), and even if IRC had an intent to deprive Bestway of Mr. Lin's ESI (it did not), Bestway must show that IRC conduct was "due to willfulness or bad faith." *See e.g.*, *Adrianna Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.5 (9th Cir. 1990). Bestway cannot show either here.

(a) ***IRC's Conduct was not Willful***

Citing *Leon*, Bestway argues, in a single paragraph, that IRC's alleged spoliation was "willful." (*See infra*, 37:22-38:3.) Bestway's argument is not credible. In fact, Bestway's own cited caselaw confirms that, to the extent any spoliation occurred (which it did not), it was not done willfully.

Specifically, in *Leon*, the Court's determination hinged on the fact that Leon "**knew** he was under a duty to preserve all data on the laptop, but intentionally deleted many files and then wrote a program to write over deleted documents" anyways. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (emphasis

added). *Leon* is easily distinguishable from the facts here and confirms that IRC's alleged spoliation—to the extent spoliation did occur—was not done willfully, with fault, or in bad faith.

**First**, long after Mr. Lin's ESI was lost, IRC reasonably believed that it did not have possession, custody, or control over Intex Xiamen. (*See e.g., supra*, § IV.A.2.) Indeed, as explained, IRC raised the same argument in the Spa Case, which Bestway did not dispute or otherwise object to. (*See supra*, 21:3-18.) Because of its reasonable belief—and in reliance of Bestway's representations bolstering the same—IRC, unlike the party in *Leon*, had no knowledge that it was under a duty to preserve Intex Xiamen ESI at all, much less when Mr. Lin's computer was re-formatted. Indeed, because of this, IRC had no knowledge that Mr. Lin's computer was re-formatted until _____—almost \_\_\_\_ years after the loss occurred. (*See* Whalen Decl., at ¶¶ 3-4.) Thus, Bestway cannot credibly argue that IRC ***knew*** that it was under a duty to preserve when Mr. Lin's ESI was lost.

**Second**, and as discussed above, IRC's duty to preserve in this Matter did not arise in 2014, as Bestway suggests, but in 2019—long after the alleged spoliation. (*See supra*, § VI.A.) Indeed, Bestway's argument that IRC had a duty to preserve at all in this Matter, much less knowledge of the same, before the Accused Beds even existed is unreasonable. *See e.g.*, *HighMark Digital, Inc. v. Casablanca Design Centers, Inc*., 2019 WL 13038414, at *4 (C.D. Cal. Oct. 3, 2019). Thus, for at least these reasons, Bestway cannot show that any alleged spoliation was "willful."

(b) ***IRC's Conduct was not Done in Bad Faith***

Bestway also argues that IRC's alleged spoliation was done in "bad faith" for two reasons. First, Bestway asserts "bad faith" because, according to Bestway, "IRC baselessly argued it had no control over the Intex Xiamen ESI in its efforts to hide relevant information." (*See e.g.*, *supra*, 38:4-39:5.) Second, Bestway claims "bad faith" because IRC and Intex Xiamen allegedly "obstructed discovery." (*See e.g.*,

63

*id*.)  Bestway is wrong on both fronts.

**First**, while Bestway may believe otherwise, IRC's reasonable litigation positions regarding not having "control" over Intex Xiamen were not "baseless." (*See e.g.*, *supra*, 38:4-11.) Indeed, this Court did not make any such finding. (*See e.g.*, ECF No. 202.) While the Court did deny IRC's Motion for Review, that does not mean IRC's arguments therein were baseless. *See e.g.*, C*heren v. Compass Bank*, 2012 WL 5381445, at *8 (D. Ariz. Nov. 2, 2012) ("Even if this Court had denied Defendant's Motion to Dismiss, which it has not, Defendant's argument is not baseless nor made without a reasonable and competent inquiry.").

Moreover, Bestway's own conduct in the Spa Case further confirms the reasonableness of IRC's arguments. Specifically, and as explained, when Bestway identified Mr. Lin in the Spa Case, IRC explained that he was "not a proper custodian", in part because it argued that IRC did not have "possession, custody, or control" of the Intex Xiamen ESI.  (*See e.g.*, DeAmicis Decl. ¶ 9, Ex. 6 at 31-32.) In response, after IRC made its ESI objections, Bestway **did not pursue any ESI from employees of Intex Xiamen**—including Mr. Lin's ESI. (*See e.g.*, DeAmicis Decl. ¶ 10.) That is, Bestway dropped the issue of Mr. Lin's ESI altogether, leading IRC to believe that Bestway (1) agreed that IRC did not control Intex Xiamen's ESI; and (2) understood that Mr. Lin's ESI was neither significant nor necessary to Bestway's claims or defenses in the case. Thus, Bestway's conduct and representations in the Spa Case—which IRC relied on in this Matter—further confirm that its arguments in this Matter were not baseless.

**Second**, Bestway resorts to casting aspersions that IRC "needlessly delayed this litigation" and participated in "efforts to hide relevant information" to "cover up its spoliation." (*See supra*, 38:20-22.) Bestway's claims are, once again, unfounded and wrong. Again, there can be no dispute that IRC did not know that Mr. Lin's ESI was lost until March 22, 2024. (*See* Whalen Decl., at ¶¶ 3-4.) That is, despite

1  Bestway's speculation to the contrary, IRC's arguments regarding control of Intex

2  Xiamen ESI could not have possibly been done to "cover up" any alleged spoliation,

3  when IRC did not even know at the time that

4  . (*See* Whalen Decl., at ¶¶ 3-4.)

5          Further, in asserting its unfounded allegations, Bestway claims that "IRC and

6  Intex Xiamen obstructed discovery." That is also incorrect. While Bestway reiterates

7  its allegation that IRC and Intex Xiamen "submitted misleading declarations," that

8  is simply not true (*see supra*, 38:12-19.) As for Mr. Hsu's declaration, he simply

9  attested

10  . (*See* DeAmicis Decl. ¶ 11, Ex. 7, ¶ 8.) As for Mr. Whalen's declaration, he

11  similarly attested that, after the Magistrate granted Bestway's Motion to Compel,

12  IRC "requested that Intex Xiamen produce ESI from Zhixiong [Jason] Huang, Hua

13  Hsiang [Tony] Lin, and Yaw Yuan [Chris] Hsu" and that Intex Xiamen, again,

14  refused. (DeAmicis Decl. ¶ 21, Ex. 17, ¶¶ 6-7.) If anything, this only confirms IRC

15  did not act in bad faith as Mr. Whalen clearly did not know that Mr. Lin's ESI had

16  been lost. (DeAmicis Decl. ¶ 21, Ex. 17, ¶6.) Thus, Bestway's unfounded assertions

17  of "misleading" declarations are patently false. In addition, while Bestway calls

18  IRC's filing of an Acknowledgement and Agreement between IRC and Intex

19  Xiamen "improper," there is simply nothing improper about two parties contracting

20  with one another, and Bestway does not provide any authority otherwise. In fact, the

21  Ninth Circuit authorized a near identical agreement under virtually indistinguishable

22  circumstances. *See Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F.3d

23  1213, 1223 (9th Cir. 2008). Finally, Bestway also argues, once more, that IRC

24  "refus[ed] to comply" with the Courts Orders, (*see supra*, 38:16-23), but as

25  explained, that is simply not true. (*See supra*, 60:23-61:27.)

26          In short, when Bestway's unsupported aspersions and accusations are set

27  aside, there can be no dispute that

28

. (Huang Decl., ¶ 5; Hsu Decl., ¶ 3, Ex. A; Hsu Decl. ¶ 6, Ex. B; *see also Gelazela v. Santa Ana Police Dep't*, 2024 WL 1136338, at \*2 (C.D. Cal. Feb. 16, 2024) ("City Defendants' alleged failure to halt their automatic deletion process, without more, does not rise to a reasonable inference of intent."); *see also Porter v. City and County of San Francisco*, 2018 WL 4215602, at \*4 (N.D. Cal. Sept. 5, 2018) (finding "no evidence" that the defendant had "intentionally spoliated" a recorded phone call that was deleted "pursuant to [the defendant's] 2-year ESI retention policy," even though the call was deleted after the defendant was under a duty to preserve evidence).

## 2.    The Malone Factors Do Not Favor Dismissal.

Finally, Bestway argues that the "*Malone* factors favor dismissal" of this Matter. (*See supra,* § V.B.2.(b).) When properly applied to the facts, however, each of the *Malone* Factors do not favor dismissal.

### (a)    *The First and Second Malone Factors Do Not Favor Dismissal.*

The first *Malone* factor is the "public's interest in expeditious resolution of litigation." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (quoting *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). It reflects the public's interest in "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Similarly, the second *Malone* factor, the court's need to manage its docket, reflects concerns of judicial economy. *See In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 460 F. 3d 1217, 1227 (9th Cir. 2006). Both factors favor dismissal when a party's misconduct results in an unreasonable delay in reaching the merits of a dispute, such that the "[party]'s noncompliance has caused the action to come to a halt, thereby, allowing the [party],

rather than the court, to control the pace of the docket." *Id.* at 1234; *see also id.* at 1227 ("[The second] factor is usually reviewed in conjunction with the public's interest in expeditious resolution and, as with the first factor, we give deference to the district court. . . .").

Here, Bestway's only argument that these factors favor dismissal is that "IRC has already violated two separate court orders requiring it to produce Intex Xiamen ESI." (*See supra*, 39:7-14.) However, as explained above, IRC has not violated ***any*** Court orders here. Specifically, after the Magistrate's Order (ECF No. 154) and the Court's Order denying IRC's Application for Stay (ECF No. 157), IRC reached out to Intex Xiamen once more and asked for the Intex Xiamen ESI. (*See supra*, 26:7-11; *accord* DeAmicis Decl. ¶ 21, Ex. 17, ¶6.) However, again, Intex Xiamen explained that it "d[id] not agree to run any e-mail searches." (DeAmicis Decl. ¶ 22, Ex. 18 at 182.) That is, IRC continuously solicited Intex Xiamen to provide the Intex Xiamen ESI in compliance with those orders; that Intex Xiamen initially refused (but has since agreed to comply) was out of IRC's control. *Ahearn v. Redondo Beach Police Dep't*, 2009 WL 728463, at *6-7 (C.D. Cal. Mar. 18, 2009) ("[T]he violating party's conduct must rise to the level of 'willfulness, bad faith, or fault,' which can be demonstrated by disobedient conduct '***not shown to be outside the control of the litigant***.'") (emphasis added).

Even so, "in a good faith effort to comply with the Court's ruling in ECF No. 157" IRC provided the information it *was* able to obtain from Intex Xiamen related to the Intex Xiamen ESI—including the information directly requested by Bestway. (*See supra*, 26:11-17; DeAmicis Decl. ¶ 22, Ex. 18 at 183.) Moreover, on March 20, 2024, when Intex Xiamen did agree, in a good faith effort to abide by the Court's order, to provide Intex Xiamen ESI for the case, IRC notified Bestway that Intex Xiamen "started these [ESI] collection efforts." (DeAmicis Decl. ¶ 24, Ex. 20 at 190.) To date, IRC is working diligently with Intex Xiamen to collect, review, and

produce Intex Xiamen ESI in this Matter. (DeAmicis Decl. ¶ 26.) Thus, there can be no dispute that IRC has fully complied (or is in the process of complying) with the Court's Orders here. Consequently, Bestway's argument regarding *Malone* factors one and two fails.

Further, Bestway has not established that IRC's alleged misconduct has caused an unreasonable delay, such that the public or court's interest in efficiency would be implicated. For example, this is not a case where a party has repeatedly missed deadlines or stalled in prosecuting its case. *See In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994) (finding that a plaintiff's four-year delay with no affirmative action to prosecute its claims constituted unreasonable delay). Nor is this a case where, as just explained, IRC has repeatedly disobeyed this Court's orders such that IRC has taken "control [of] the pace of the docket." *See In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 460 F. 3d 1217, 1234 (9th Cir. 2006).

Instead, as the plaintiff, and due to Bestway's continued infringement, IRC has every desire to "expeditious[ly]" resolve this Matter. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (quoting *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). If anything, Bestway's conduct has stalled the progress of this litigation. For example, Bestway has delayed finalizing its ESI discovery in this case including by producing over 30,000 pages of documents as recently as May 24, 2024. (DeAmicis Decl. ¶ 31, Ex. 25.) Additionally, Bestway has refused to produce evidence—such as samples related to its asserted prior art, and flat files for its own Accused Bed packaging—that is clearly within its possession, custody, or control and is directly responsive to IRC's discovery requests, causing unnecessary discovery disputes and motion practice. (*See e,g,*, ECF Nos. 236, 237.)

Accordingly, the first and second *Malone* factors do not weight in favor of dismissal here.

1
2

(b)  ***The Third Factor, Risk of Prejudice, Counsels Against Dismissal.***

3       The risk of prejudice, the third factor in *Malone*, cuts against dismissal in this
4   case. Bestway's primary argument regarding this factor is that because Mr. Lin's
5   ESI has been lost, "it is unable to obtain seminal information on key aspects of this
6   case." (*See supra*, 39:23-40:2.) Bestway's arguments are not credible and belied by
7   its conduct in the Spa Case. As explained, IRC made the exact same objections based
8   on lack of possession, custody, and control of Intex Xiamen ESI (including Mr. Lin's
9   ESI) in the Spa Case and Bestway did not contest those objections for years until
10  raising the issue in this Matter. That is, Bestway apparently did not feel that Mr.
11  Lin's ESI contained "seminal information" causing the inability to put on its case in
12  the Spa Case, but somehow Mr. Lin's ESI contained "seminal information" causing
13  the inability to put on its case in this Matter. (*See supra*, 39:3-40:2.) Bestway has not
14  (and cannot) explain how Mr. Lin was not significant enough to pursue in the Spa
15  Case but, in this Matter, his ESI being lost makes Bestway unable to "test the
16  veracity of the allegations and claims made by IRC." (*See supra*, 40:4-5.)

17      Further, Bestway's argument presumes, without any support, that Mr. Lin's
18  ESI would include information relevant to a host of issues, but that is simply not the
19  case. For example, while Bestway claims that Mr. Lin's ESI would include evidence
20  regarding "conception" and "reduction to practice", IRC has already explained that
21  it "is not relying on a conception and/or reduction to practice earlier than" the
22  effective filing dates of the asserted patents. (*See* DeAmicis Decl. ¶ 32, Ex. 26, at
23  224, 220)). Thus, because IRC is not relying on an earlier priority date, any earlier
24  evidence of "conception" and "reduction to practice" is irrelevant to this Matter. *See*
25  *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) (a party "need not provide
26  evidence of either conception or actual reduction to practice when relying on the
27  content of the patent application."). As another example, Bestway argues that
28

because Mr. Lin's ESI was lost, it is unable to obtain information on the "interpretation of the language used" in the "Asserted Patents." (*See supra*, 39:23-40:2.) However, caselaw is equally clear that inventor testimony regarding the same is "***irrelevant***." *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction"). Indeed, caselaw has, time and again, explained that inventor testimony is irrelevant to most, if not all, of the issues Bestway has identified. *See e.g.*, *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339-40 (Fed. Cir. 2010) ("[T]he district court properly . . . excluded [the named inventor] from providing expert testimony on invalidity for which they have not previously provided expert reports or been qualified as an expert"); *accord Lucent Techs., Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 933 (S.D. Cal. 2007) ("the relevance of [the inventor]'s possible testimony on [the issue of invalidity] is questionable at best"); *Cordis Corp. v. Boston Sci. Corp.*, 561 F. 3d 1319, 1338 (Fed. Cir. 2009) (A named inventor's "testimony did not provide relevant evidence of infringement and created a risk of prejudice."). Thus, while Bestway complains about how it is unable to obtain "seminal information" on "key aspects" of the case, the caselaw confirms that Mr. Lin's ESI would be only marginally relevant—if relevant at all—to the litigation. *See e.g.*, *Medina v. Boeing Co.*, 2022 WL 599021, at *4 (C.D. Cal. Jan. 27, 2022) ("While it is possible that there is additional evidence relevant to [plaintiff]'s claims which were destroyed, [defendant] has not made a showing that such a possibility has rendered it unable to defend the case altogether.").

Moreover, Bestway's entire motion fails to even consider, much less show, that Mr. Lin's ESI could not be "restored or replaced through additional discovery." *See e.g.*, *Hugler v. Sw. Fuel Mgmt., Inc*., 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017) ("[I]f the despoiled information can be restored or replaced through

1   additional discovery, the Court cannot impose sanctions under Rule 37(e).").

2   Bestway's failure to make this showing warrants denial of Bestway's severe relief.

3   *See id.*

4       There are many other discovery sources that can replace Mr. Lin's lost ESI.

5   For example, Mr. Chris Hsu is the only other named inventor on the two asserted

6   patents, and Intex Xiamen is in the process of producing his ESI. (*See* DeAmicis

7   Decl. ¶ 26.) Intex Xiamen is further willing to make him available for deposition, as

8   was also done in the Spa Case. Thus, to the extent Bestway needs evidence from an

9   "inventor," they will have it from Mr. Hsu.

10      Further, Mr. Hsu testified that

11

12                          . (*See* Caloiaro Decl. ¶ 7, Ex. B (Hsu Tr.,) at 42:7-43:25

13

14                                                          ).) Indeed,

15   Mr. Hsu went on to explain that

16

17

18

19

20

21

22

23

24

25

26

27

28

(*See* Caloiaro Decl. ¶ 7, Ex. B (Hsu Tr.,) at 42:21-43:25.) Given that the asserted claims of the patents at-issue in this Matter indisputably involve the "inflatable" aspects of the Accused Beds (                                   )—as opposed to any electrical components thereof (                                   ), Mr. Hsu' testimony further confirms the minimal (if any) prejudice to Bestway due to Mr. Lin's lost ESI.

Moreover, Bestway already has ample ESI from Mr. Lin. Indeed, 

. (*See e.g.*, Caloiaro Decl., Exs. H, I.) Thus, Bestway has failed to establish that any emails relevant to this Matter are irreplaceable through other custodians. *See e.g.*, *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 552 (N.D. Cal. 2018) ("[R]elief would not be available under the amended rule where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian") (citation omitted); Adv. Comm. Notes to 2015 Amendment to Rule 37(e)(1) ("Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.").

Relatedly, although not required, IRC has offered remedial remedies to further reduce any possible prejudice to Bestway. For example, once Intex Xiamen agreed

to produce Intex Xiamen ESI in the case, it explained that it was willing to identify an additional custodian, Mr. Chung Ho, the director of R&D Plastic Consumer Products at Intex Xiamen, to replace Mr. Lin. (*See* DeAmicis Decl., ¶ 16, Ex. 12)

Further, to the extent the Court would find Bestway's alleged prejudice to be further reduced by additional remedial measures, IRC is willing to provide two additional remedial measures.

. *See Oracle* 328 F.R.D. 543, 552 (N.D. Cal. 2018) ("[R]elief would not be available under the amended rule where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian") (citation omitted). Second, and again, to the extent the Court finds it would further reduce any alleged prejudice to Bestway,

(*See* DeAmicis Decl. ¶ 14, Ex. 10 at 86:3-5) (emphasis added).) In short, while these additional remedial measures are not required by the Bed Case ESI Order nor by Bestway's ESI requests, these measures, to the extent the Court deems them necessary, are exemplary of IRC's good-faith efforts to alleviate any alleged prejudice to Bestway. *See Oracle* 328 F.R.D. 543, 552 (N.D. Cal. 2018).

Finally, there is no dispute that IRC has provided Bestway with extensive discovery in this Matter. Specifically, to date, IRC has produced, at minimum, more than 63,000 documents, spanning over 362,000 pages, to Bestway. (DeAmicis Decl.,

¶ 33.) Further, Bestway has also had an opportunity to depose Mr. Hsu, the co-inventor of the '240 Patent in the Spa Case (*see e.g.*, Caloiaro Decl., Ex. B.) and has the same opportunity to do so in this Matter. In short, given the sheer volume of discovery that has taken place, Bestway cannot establish that it has been so prejudiced as to warrant case termination. *See Montoya v. Orange Cty. Sheriff's Dept.*, 2013 WL 6705992, at *7 (C.D. Cal. 2013) ("As demonstrated by the voluminous evidence submitted on the parties' motions for summary judgment, Plaintiff has received a large quantity of materials through the discovery process and will not be forced to 'rely on incomplete and spotty evidence at trial'"); *see also Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564 (N.D. Cal. 2008) ("As mentioned in its June 30, 2008 Order, the Court does not find that default sanctions are appropriate because the actions alleged to have been taken by defendants 'do not eclipse entirely the possibility of a just result.'") (citation omitted).

Next, Bestway again resorts to inaccurate assumptions and inflammatory rhetoric to argue that "IRC withheld the fact that Mr. Lin's ESI was intentionally deleted until *after* the Court denied its Motion for Review." (*See supra*, 40:6-15.) In fact, Bestway goes so far as to concoct a conspiracy theory that IRC "colluded with Intex Xiamen to avoid producing Mr. Lin's ESI." (*See supra*, 40:16-22.) As explained, Bestway is flat wrong. Again, IRC did not know that Mr. Lin's ESI had been lost ███████████████████████████████████████████████████████████,
***after*** (1) IRC submitted the Acknowledgement and Agreement with Intex Xiamen; and (2) the Court's order on IRC's Motion for Review. (*See* Whalen Decl., ¶¶ 3-4.) Thus, counter to Bestway's assertions otherwise, once IRC knew of Mr. Lin's lost ESI, it did not "dece[ive]" Bestway but, instead, promptly disclosed the issue. (*See* DeAmicis Decl. ¶ 16, Ex. 12.)

Finally, Bestway questions IRC's ability to "comply with its discovery

obligations" because, Bestway asserts, "IRC nonetheless continues to deny legal control." Again, Bestway is factually inaccurate. As explained, while IRC respectfully disagrees with the Court's control finding based on a single boilerplate provision in an assignment agreement (and maintains its appellate rights regarding the issue), IRC is no longer challenging the Court's control finding, based on a single boilerplate provision in an assignment agreement, for the purposes of providing the ordered ESI in this case. Instead, it is working diligently with Intex Xiamen, who agreed to provide the ESI it possesses in response to Bestway's requests. (*See* DeAmicis Decl. ¶ 26.) Moreover, Bestway's questioning of IRC's ability to "comply with its discovery obligations" is nothing more than rank speculation, especially given IRC's constant and continuous compliance with discovery in this Matter. *See e.g.*, *Gault v. United States*, 2022 WL 4292340, at *9 (C.D. Cal. Aug. 23, 2022), *report and recommendation adopted*, 2022 WL 4291320 (C.D. Cal. Sept. 15, 2022) ("Mere speculation is an insufficient basis for a finding of spoliation.")

> (c)   ***The Fourth Factor, the Public Policy Favoring the Disposition of Cases on Their Merits Counsels Against Dismissal***

As Bestway itself concedes (*see supra*, 39:7-8.) the Fourth *Malone* factor counsels against dismissal. In fact, the Ninth Circuit has "often said that the public policy favoring disposition of cases on their merits **strongly counsels against dismissal**." *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006). Accordingly, the Fourth *Malone* Factor "strongly" favors IRC. *See id*.

> (d)   ***The Fifth Factor, the Availability of Less Drastic Sanctions Strongly Counsels Against Dismissal***

The availability of less drastic sanctions, the fifth factor in *Malone*, strongly cuts against dismissal in this case. The Ninth Circuit has identified three considerations to determine whether a district court has adequately considered less

drastic sanctions, whether: (1) "the court explicitly discuss[es] the feasibility of less drastic sanctions and explain[s] why alternative sanctions would be inappropriate;" (2) "the court implement[s] alternative sanctions before ordering dismissal;" and (3) "the court warn[ed] the party of the possibility of dismissal before actually ordering dismissal." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987).

Here, Bestway argues that this factor is met because "IRC knew it could not comply with the discovery order." (*See supra*, 41:14-17.) As such, Bestway simply concludes that "IRC's actions demonstrated that less dramatic sanctions are not warranted here." Bestway's argument is unsupported and without merit, and all three considerations subsumed within factor five weigh strongly against dismissal.

First, Bestway has not (and cannot) shown that the Court has "explicitly discuss[ed] the feasibility of less drastic sanctions and explain[ed] why alternative sanctions would be inappropriate." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987). As an initial matter, Bestway's motion does not even substantively discuss lesser sanctions, much less why those lesser sanctions are appropriate. (*See generally supra*, § V.B.2.b.) Indeed, if anything, Bestway's ask for "[a]lternative" sanctions, *see supra*, 42:8-11, actually implies that there are, in fact, lesser sanctions available to the extent that the Court finds spoliation here. *See e.g.*, *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1060 (S.D. Cal. May 8, 2015) ("To date, the Court has not imposed any sanctions on Plaintiff. In its Motion, Defendant addresses an alternative, less drastic sanction for the Court to consider. Although Defendant believes that terminating sanctions are appropriate in this situation, the Court finds that terminating sanctions are not warranted as there is an appropriate less drastic sanction that can be imposed."). Moreover, Bestway fails to point to any "explicit[] discuss[ion]" by the Court of "the feasibility of less drastic sanctions" or "why alternative sanctions would be inappropriate." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987). The reason is simple: the Court has

never done so. Instead, the Court explicitly found that issuing an "order to show cause" regarding "Rule 37 sanctions would be **premature**." (*See* ECF No. 202 (emphasis added).) Thus, the first consideration of factor five strongly favors IRC.

Second, Bestway has not (and cannot) shown that the Court "implement[ed] alternative sanctions before ordering dismissal." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987). Specifically, there can be no dispute that **no sanctions have been levied upon IRC** in this Matter. Indeed, again, the Court's Order specifically explained that even a discussion of such sanctions would be "premature." (*See* ECF No. 202.) And, as it must, Bestway does not argue otherwise. In fact, Bestway seems to concede the point altogether, as it fails to provide any analysis whatsoever regarding this consideration. (*See generally supra*, § V.B.2.b.)

Indeed, the only possible discussion of this consideration is its lone citation to *Transamerica*, but that case is readily distinguishable. Specifically, in *Transamerica*, prior to requesting a "proposed report concerning entry of default," the Court (1) issued two orders to show cause; (2) explicitly asked the parties "whether monetary sanctions should be imposed;" and (3) "warned that non-compliance could result in a default judgment." *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1148 (9th Cir. 2024). "Only after Defendants— amazingly—failed to comply with any aspect of that further order did the district court request a proposed report concerning entry of default judgment." *Id.* Here, unlike *Transamerica*, the Court has (1) never issued an order to show cause (finding the same "premature"); (2) has never discussed any sanctions of IRC; and (3) has not proffered any warning that non-compliance could result in a default judgment. Thus, the second consideration of factor five also strongly favors IRC.

Third, Bestway has not (and cannot) shown that the Court warned IRC of the possibility of dismissal. *See Reed v. Clear Recon Corp.*, 2019 WL 2579234, at *2 (N.D. Cal. June 24, 2019) ("Before ordering a terminating sanction, a court must

warn the plaintiff and try other sanctions first."). Indeed, Bestway concedes, as it must, that the Court "has not explicitly warned IRC of the possibility of dismissal." (*See supra*, 41:21-22); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987) ("Failure to warn has frequently been a contributing factor in [Ninth Circuit] decisions to reverse orders of dismissal."). Instead, Bestway argues that IRC "had prior notice and warning" because ***Bestway*** sought case terminating sanctions in its Motion to Show Cause. (*See id.*) However, caselaw is clear that it is the Court—not Bestway—that must do the warning. *See Reed v. Clear Recon Corp.*, 2019 WL 2579234, at *2 (N.D. Cal. June 24, 2019) ("Before ordering a terminating sanction, **a court** must warn the plaintiff") (emphasis added).

Finally, Bestway argues that, in some cases, "an explicit warning is not always necessary." (*See supra*, 41:27.) While that may be true, caselaw is equally clear that an explicit warning is only unnecessary in "case[s] involving 'egregious circumstances'" *See Smith v. Hoffman*, 2017 WL 5957740, at *7 (N.D. Cal. Nov. 30, 2017). Bestway fails to explain how this Matter rises to the level of "egregious circumstances" such that IRC was on notice that case terminating sanctions could ensue. *Cf. Computer Task Grp. Inc. v. Brotby*, 364 F.3d 1112 (9th Cir. 2024) ("two monetary sanctions, five orders compelling him to cooperate and repeated oral warnings were enough to put [defendant] on notice that continued failure to cooperate in discovery would result in dismissal and default").

Bestway's cited caselaw is inapposite. For example, in *Anheuser-Busch*, the Court explicitly warned the litigant of possible case terminating sanctions. *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 353 (9th Cir. 1995) ("[I]n this case, the district court *did* explicitly warn [defendant] that discovery misconduct or violating its orders could result in serious repercussions, including dismissal") Here, however, and as Bestway concedes, the Court "has not explicitly warned IRC of the possibility of dismissal." (*See supra*, 41:21-22.) Similarly, in

*Ahearn*, the Court explained that "it did advise the parties that it would entertain a motion by defendants for case dispositive sanctions." 2009 WL 728463, at *10; *see also id*. ("Nor could plaintiff have been unaware of the Court's inclination to impose harsh sanctions given its express warnings to her regarding sanctions at the September 25, 2008 hearing and its admonition to her to not "play games" or engage in "any more shenanigans."). Here, again, Bestway cannot point to a single time where the Court "advise[d]" or "express[ed] warning" to IRC regarding possible case determinative sanctions. *See id*.

Accordingly, because each consideration of factor five weight in favor of IRC, favor five weighs strongly against case termination sanctions. And, in view of the above, the *Malone* factor analysis weighs strongly in favor of IRC and against dismissal of this Matter.

### 3. Bestway has not Shown that Lesser Sanctions are Appropriate.

Finally, in a single sentence, Bestway states that "[a]lternatively, the Court should issue the strongest possible adverse inference instruction, and preclude IRC from relying or presenting documents from Intex Xiamen related to the development and history of the Asserted Patents, as well as documents related to research, design, and conception." (*See supra*, 42:8-11.) Bestway does nothing to explain or otherwise analyze why these particular alternative sanctions are the "least onerous sanction" in view of the alleged spoliation. *See Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc*., 2013 WL 12129368, at *3 (C.D. Cal. Feb. 20, 2013). Nor does Bestway explain how these alternative sanctions would, in any way, relate to and are "tailored to remediate the loss" of Mr. Lin's email. *See e.g.*, *J.S.T. Corp. v. Robert Bosch LLC*, 2019 WL 2324488, at *11 (E.D. Mich. May 30, 2019), *report and recommendation adopted*, 2019 WL 2296913 (E.D. Mich. May 30, 2019). Instead Bestway simply asks this Court to hamstring IRC, thereby providing a "windfall" to

Bestway. *See id*. Accordingly, this Court should deny these alternative sanctions as well. *See e.g.*, *Williams v. Cnty. of San Diego*, 2019 WL 1499597, at *6 (S.D. Cal. Apr. 5, 2019) ("Defendant neither demonstrates that Rule 37 authorizes fees in this situation nor explains why the imposition of sanctions is appropriate. Accordingly, the Court DENIES Defendant's request").

To the extent that the Court finds spoliation occurred (which it should not do) and any sanctions are warranted (which IRC does not believe is the case), in view of the above, any relief should be limited to a jury instruction allowing the jury to hear "a short factual statement at trial regarding the spoliation of this evidence." *Porter v. City & Cnty. of San Francisco,* 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) ("[T]he court orders that the jury may hear a short factual statement at trial regarding the spoliation of this evidence. The statement should inform the jury that CCSF had a duty to preserve a copy of the Okupnik call, and that despite this duty, the recording of the call was erased and is no longer available.") Specifically, to the extent the Court finds spoliation occurred and that sanctions are warranted, because, as explained above, (1) IRC had no intent to deprive Bestway or Mr. Lin's ESI; and (2) given the minimal (if any) prejudice to Bestway, any sanctions should be limited to the following factual statement:

*Porter v. City & Cnty. of San Francisco,* 2018 WL 4215602, at *4; *see also Gelazela v. Santa Ana Police Dep't*, 2024 WL 1136338, at *3 (C.D. Cal. Feb. 16, 2024) ("The Court would instruct the jury that City Defendants had a duty to preserve a copy of the surveillance videos, and that despite this duty, the videos were automatically

deleted pursuant to Santa Ana Jail's one-year retention schedule.")

## VII.  CONCLUSION

### A.  <u>Bestway's Position</u>

For the reasons stated above, Bestway requests that this Court grant its Motion and enter an order dismissing this action pursuant to Fed. R. Civ. P. 37(e).

### B.  <u>IRC's Position</u>

For the reasons stated above, IRC requests that this Court deny Bestway's Motion and any related relief sought.

Dated: June 12, 2024                DICKINSON WRIGHT PLLC

                                    */s/ Steven A. Caloiaro*
                                    Steven A. Caloiaro, CA Bar No. 284410

                                    *Attorneys for Defendants Bestway (USA)*
                                    *Inc., Bestway (Hong Kong) International*
                                    *Ltd., and Bestway Inflatables and Material*
                                    *Corporation*

Dated: June 12, 2024                FAEGRE DRINKER BIDDLE
                                    & REATH LLP

                                    */s/ Joshua DecAmicis*
                                    Joshua DeAmicis (*pro hac vice*)

                                    *Attorneys for Plaintiff Intex Recreation Corp.*

### ATTESTATION

I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the content of this filing and have authorized the filing.

                                    */s/ Steven A. Caloiaro*
                                    Steven A. Caloiaro